CAUFMAN
vs
SAYRE et al.

---

CHANCERY.

Case 67.

*December 25.*

## Caufman *vs* Sayre *et al.*

ERROR TO THE FAYETTE CIRCUIT.

*Jurisdiction.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

The facts of the case.

CATHARINE M. CAUFMAN having mortgaged a tract of land in Jefferson county, to *David A. Sayre,* of Fayette, for securing the payment of two notes for $1250 each, one payable October 8, 1840, and the other payable Oc-tober 8, 1841, *Emelius K. Sayre,* claiming to be the as-signee of the said notes, and collateral 'security, filed a bill in chancery in the Fayette Circuit Court, on the 17th of October, 1840, against the mortgagor and mortgagee, alledging the non-payment of the first note, which was then due, and praying for a foreclosure and sale for the amount of both notes.   A subpœna having been served on *D. A. Sayre,* in Fayette, and on *C. M. Caufman,* in Jefferson, and neither of them either answering or appear-ing, the Court, at the December term, 1840, succeeding the appearance term, rendered a *nisi* decree for the pay-ment of the first instalment on or before the 1st day of the February term, 1841, and at this last term, the required payment not having been made, a decree was rendered directing the sale of the mortgaged land for the amount of both notes, on a credit of three months for the amount of the first, and on a credit until the 8th of October, 1841, for the amount of the last, which was payable on that day.

The mortgagor seeks the reversal of that decree on two grounds: 1st, An alleged want of jurisdiction in the Fayette Circuit Court; and, 2ndly, Error in so much of the decree as foreclosed the equity of redemption and directed a sale as to the sum which was not due when the decree was rendered.

CAUFMAN
vs
SAYRE et al.

Questions stated.

1. A bill for foreclosure only, is altogether *in personam*, and, therefore, jurisdiction over such a bill belongs to the court of equity of any county in which the defendant or any one necessary defendant, shall be served with proper notice. But, as a sale of mortgaged land operates *in rem*, cognizance over a bill for a sale may be exercised by the court of equity of the county in which the land lies, and would, upon common law principles, be restricted to that local court, if the prayer for a sale were the only grounds of jurisdiction.

Bill in equity for a foreclosure of equity of redemption alone in land is transitory, and any court where a necessary defendant is served with process, has jurisdiction; but if a decree for sale only is asked, the court of the county where it lies has the jurisdiction.

But a bill for ascertaining and settling the amount due and for both foreclosure and sale, is personal as well as local; and, therefore, in our opinion, either the person of a necessary defendant or the locality of the mortgaged premises may give jurisdiction in such a suit. It cannot be known until the final decree, whether the suit may not produce the debt without a sale of the mortgaged estate.

But a bill for ascertaining the amount due on a mortgage, and for foreclosure and sale, is personal as well as local, and the service of process on any necessary defendant, gives to the court of the county where the defendant may be found, jurisdiction, or the locality of the mortgaged premises will give jurisdiction.

*D. A. Sayre* seems to have been an indispensable party, because the assignment of the mortgage, as described in the bill, cannot be understood as passing to his assignee the legal title of the mortgagee.

Consequently, as we cannot *presume* that the assignment was merely nominal, for the purpose of giving jurisdiction to the Fayette Circuit Court, the judicial deduction from the record is, that the decree is neither void nor erroneous for want of jurisdiction to render it.

2. The decree, as rendered, is certainly anomalous in character and questionable in principle. The chief argument in support of it is the assumption that the default in the first instalment entitled the mortgagee to a final and conclusive foreclosure of the mortgagor's equity of redemption, as to any and every portion of the land mortgaged; and that, therefore, as the mortgagee might thus have obtained an irredeemable title to the entire tract, the mortgagor cannot complain that he has elected to have it

sold for paying the whole debt, according to the prescribed instalments.

But can this assumption be maintained by either authority or principle?

*English practice in decreeing on bills on mortgages—a bar foreclosure without sale. Ireland, to decree a sale in all cases without consent.*

In England it is the established practice under the common law, to decree a foreclosure without sale unless— 1st, the mortgagor consent to a sale; 2d, the interest mortgaged be a dry reversion or an *advowson*; 3d, the estate be insufficient to pay the debt; 4th, the equity of redemption descends to an infant; 5th, the mortgagor becomes bankrupt; 6th, the estate lies in Ireland, where, as here, the more eligible practice prevails, of decreeing sales unless both parties prefer a simple foreclosure, whereby the mortgaged estate is vested irrevocably in the mortgagee, in satisfaction of his entire debt.

*An entire debt payable in instalments, on failure to pay first instalment, mortgage forfeited & mortgagee may enter.*

And there can be no doubt that, under an ordinary mortgage of land for an aggregate debt, payable in instalments, the mortgagee may, after default in the first or any other payment, enter or maintain ejectment and retain possession of the entire tract, subject to an account for the profits; because the condition of defeasance being indivisible, a failure to pay, as stipulated, the entire debt or any portion thereof amounts, in technical law, to a forfeiture.

*But in such case a court of equity will not decree a conclusive foreclosure of the equity of redemption as to the whole.*

But has it ever been adjudged in England or elsewhere, that, for a failure to pay one of several instalments a court of equity should decree a *conclusive* foreclosure of the equity of redemption as to the whole of the mortgaged property? We have not been able to find any such judicial decision. The cases of *Stanhope* vs *Manners*, (2 *Eden.* 197;) *Gladwin* vs *Hitchman*, (2 *Vernon*, 135,) and *Leveridge* vs *Forty*, (1 *Maule & Selwyn*, 706,) have been inadvertently referred to by *Mr. Coventry*, as looking that way: *Coventry's Powell*, 3 vol. 903–965. But no one of these cases, when examined, will be found to contain any thing which could authorize such a reference. In *Stanhope* vs *Manners*, interest was payable periodically, on each of several instalments of principal, and the mortgagee had, by *an express stipulation* in the mortgage, *the election to call in all his money on a default in the payment of any one instalment of interest*. And,

on a failure by the mortgagor to to pay interest, the mortgagee having elected to call in his entire debt, the court decided that he had a right to do so, and, therefore, to foreclose the equity of redemption as to all the instalments and the whole mortgaged estate.

The only point adjudged in *Gladwin* vs *Hitchman* was, that under a mortgage securing a debt at the end of five years, and the semi-annual payment of intermediate interest thereon, an assignee who, about two months before the principal became due, had advanced to the mortgagee the aggregate amount then due, (no interest having been paid by the mortgagor,) was entitled to interest on the interest due and unpaid when he bought the benefit of the mortgage, because the interest, after it became due should, in the opinion of the court, carry interest.

And in *Leveridge* vs *Forty*, a mortgage and warrant of attorney having been given to secure a debt in instalmants, the court refused to quash an execution for the entire debt, issued after only one instalment had become due, assigning as the reason for overruling the motion, the opinion that the *terms of the warrant of attorney constructively imported that the mortgagee might have execution for the whole debt, in the event of a non-payment of any one instalment.*

Neither of these cases, therefore, applies, in the remotest manner, to the question whether a mortgagee, whose mortgage was intended to secure a debt in prescribed instalments, can be entitled, without the mortgagor's consent, to a decree of irrevocable foreclosure as to the entire property before the whole debt has become due or *demandable,* and when, therefore, there had been no forfeiture nor default as to a portion of the debt.

And would such a decree be generally, if ever, consistent with the intention of the contracting parties or the principles of equity?

A mortgage being intended as a collateral security and being, moreover, entitled to no other effect in equity, should not, as a mere matter of election by the mortgagee, be enforced by a court of equity, for any other purpose than that of paying the debt, or so much thereof only, as shall be due and unpaid at the date of the de-

CAUFMAN
*vs*
SAYRE *et al.*

A mortgage is intended as collateral security for the debt, and a court of equity will give it no other effect, nor enforce for no other purpose, and for only so

CAUFMAN
*vs*
SAYRE *et al.*

much as is due
at the date of the
decree.

cree, nor to any greater extent than the default of the mortgagor and the right of the mortgagee, *as to the debt* which is the principal, the mortgage and the equities resulting therefrom, being merely incidental, a court of equity will not enforce a technical forfeiture. Such a court, looking to the form and object and not to the letter of the contract, treats a mortgage as collateral security merely, and will aid the mortgagee no farther than may be necessary for enforcing his debt, as it becomes due, and upon equitable principles. Whatever may, therefore, be the merely legal rights of a mortgagee, if, instead of enforcing them, he elects to resort to a court of equity for foreclosure, that court ought not to foreclose, either before there was any equity of redempton of which the mortgagee could avail himself by bill, or to any greater extent, finally, than that to which the mortgagor had a right to redeem. A mortgagor has no equity of redemption before forfeiture; and when a forfeiture, as in this case, had resulted only from the non-payment of the first of several instalments, his equity of redemption would be limited to that instalment, and he could not anticipate or be required to pay, before they became due, the other instalments.

The right to foreclose and the right to redeem are reciprocal and commensurable.

Then, consistently with these well established principles of equity, can a mortgagee, under an ordinary mortgage, securing an aggregate debt payable in ten annual instalments, be entitled, upon a default only as to the first instalment, to a decree of conclusive foreclosure as to the whole of the mortgaged estate? And should he obtain such a decree, would the entire debt be thereby discharged, or would so much only be satisfied as was due and recoverable at the date of the decree? Would not the mortgagor still have a right, both equitable and legal, to pay the other instalments as they should become due, according to the contract? And would not such payment or an offer to pay, open the foreclosure either entirely or *pro tanto?* Or if, as he might do, the mortgagee should sue at law to recover the remaining instalments, would he not thereby open the foreclosure?

Any answer that can be given to these enquiries will show, either that a foreclosure in such a case should only operate to the proportionate extent of the instalment as to which there had been default, or that, if it can conclude the mortgagor as to the whole of the mortgaged estate, he has either been compelled to submit to a sale of his estate to pay nine of the annual instalments, before he had been guilty of any default as to any one of them, or that the whole estate has, by decree, been confirmed to the mortgagee for only one of ten equal parts of an aggregate debt, to secure the whole of which the mortgage was given.

It seems to us, therefore, that a final foreclosure in such a case, if any such be deemed proper, should be decreed only to the relative extent of so much of the debt as had become due and been withheld in violation of the contract. And a careful and protracted research has not enabled us to find in the reports of cases adjudged by the Courts of England, or by those of our own country, any judicial decision authorizing a more comprehensive deduction.

But in this country a mortgagee must generally proceed in equity for a sale as well as a foreclosure, and will not generally be entitled, without the mortgagor's consent, to a decree of foreclosure only.

Here the mortgagee has, without the mortgagor's concurrence, three general remedies—1st, to take possession of the mortgaged property, and apply the profits to the extinguishment of his debt; 2d, to sue in a court of common law, and enforce his judgment either by execution or by filing a bill and obtaining a decree for subjecting the mortgaged estate by sale to the satisfaction of his judgment; and 3d, by filing his bill in the first instance, for a foreclosure of the equity of redemption; and a sale of the mortgaged property, or so much as shall be necessary.

The object of resorting to either of these two last judicial remedies is the same—that is, the collection of the debt, or so much thereof as shall be due and collectable; and if the mortgagee elect to sue in chancery in the first instance, should he have a right, as a matter of

*Margin notes:*

CAUFMAN
vs
SAYRE et al.

A final foreclosure of a mortgage for one of several instalments, cannot extend beyond the instalment due.

Mortgagees—three remedies in this country.

No decree can be rendered on a bill to foreclose, to sell to pay instalments not due.

course, at his own election, to sell the mortgaged estate for a part of the debt which has not become due, when he would have had no such right had he obtained a judgment, and either issued an execution thereon or filed an auxiliary bill? In each form of proceeding, the legitimate aim and end being the same, the equitable right must, as a general rule, also be the same. And this doctrine was virtually recognized by this Court in the early case of *Adams et al.* vs *Essex et al.* 1st *Bibb,* 149; in which case the Court seems first to have assimilated a bill for a foreclosure and sale under a mortgage for securing a debt in instalments to an action of debt as the concurrent legal remedy; and therefore, on the first consideration, had decided that a suit for foreclosing and selling could not be maintained until all had become due and enforcible; but, on a re-consideration, such a procedure in equity on such a mortgage being deemed more analagous to an action of covenant in which any one instalment which has become due may be recovered, the Court finally decided that a default in the first instalment authorized a bill for a foreclosure and sale *pro tanto,* and for as much more as might become due before the date of the decree. And, whilst the Court suggested that such a bill might be retained until all the instalments had become due, it explicitly expressed the opinion that, in that case, there could be no decree for a sale for any instalment which was not due at the time of the decree.

As to the general principle therein recognized, that decision seems to us to be as reasonable as it is authoritative, and especially in the absence of any opposing authority. There should however, as we think, be exceptions from that just and salutary doctrine.

If the mortgaged property be indivisible, there might be a question whether the whole, or only a part of it, or a partial interest in it, should be directed to be sold by decree for one of several instalments; or whether, under all the circumstances of each particular case, it might be more equitable to postpone a sale until a default had occurred as to the entire debt. We presume, however, that in such cases generally it might appear to be most

just and consistent with analogy to sell the whole of the indivisible property for paying so much as may be due at the date of the decree, and for securing the payment of the residue as it shall afterwards become due. And in the case of *The Bank of Ogdensburgh* vs *Arnold*, (5th *Paige's Rep'ts.* 29,) the *Chancellor* of *New York* said that such had been the doctrine and practice in that State, upon common law principles.

But when, as in this case, the mortgaged estate does not appear to be indivisible, but being a tract of land, may be presumed to be conveniently divisible, it does seem to us that, in the exercise of a sound judicial discretion, the Chancellor has no authority to require, against the mortgagor's will, the sale of more than shall be necessary for paying so much of the debt as may be due and recoverable by suit at the date of his decretal order, unless he shall be well satisfied from the character of the property and the condition of the mortgagor, that by selling only a part at one time, the mortgagee may lose a portion of his debt, and also, that a sale of the entire estate at once would either, secure the whole debt, or approximate more nearly to it than several sales in parcels, in which event we should not deny the discretion to decree a sale of the whole on a survey of all the facts and consequences.

If, in such a case, the mortgage be not satisfied with such a procedure, he may sue at law, or enter and enjoy the profits, or wait for a decree for sale, until his entire debt becomes due. If he expected more he ought to have secured it by an express stipulation in his contract of mortgage.

In this case the mortgage is of the ordinary character, and must be construed as a collateral security merely for each instalment as it should become due, and no more.

And the fact that the mortgage was given to secure the price for which the mortgagee had previously sold and conveyed to the mortgagor the mortgaged land, cannot be deemed material; for, had there been no other security than an implied equitable lien, a court of equity, upon no other facts than such as now appear in this case, would not have enforced it, otherwise than by decreeing the sale

CAUFMAN
*vs*
SAYRE *et al.*

If mortgaged property be indivisible, can the Chancellor decree a sale for any instalment, until all be due, *quere*, N. York practice cited—

But the Chancellor may sell the whole estate with the assent of mortgagor, or where the interest of mortgagee would require it.

of so much of the land as might be necessary for paying whatever was due and demandable when the decree was rendered; and the mortgage as written, cannot import more than would have been implied by a resulting lien, without any express contract for an incumbrance on the land.

Consequently, as it neither appears in this case that the mortgaged land is not conveniently divisible, nor that a sale of the whole of it at once is necessary for securing both instalments of the debt, or preventing unjust loss to the mortgagee, it seems to this Court that the decree of the Court below was not such as it ought to have been.

Decree *reversed* and cause remanded.

*Owsley and Pirtle* for plaintiff; *Robinson and Johnson* for defendants.