STATE OF KANSAS *ex rel.* ATTORNEY GENERAL *v.* SOUTHERN KANSAS RY. CO.[1]

(*Circuit Court, D. Kansas.* June 2, 1885.)

RAILROAD COMPANY—FORFEITURE OF LAND GRANT—FAILURE TO BUILD ROAD—MANDAMUS.

Where a portion of a grant of land to a railroad company has lapsed, and been forfeited by reason of the failure of the company to build a certain part of its road within the time named in the grant, *mandamus* will not lie to compel the railroad company to build that portion of the road to which the forfeiture of the grant attaches.

On February 12, 1858, the legislature of the territory of Kansas incorporated the Leavenworth, Lawrence & Fort Gibson Railroad Company, and authorized it to construct a railroad from Leavenworth via Lawrence to the southern boundary of the territory. On the third of March, 1863, the congress of the United States passed an act granting lands to the state of Kansas to aid in the construction of certain roads. The first part of the section reads as follows:

"Be it enacted by the senate and house of representatives of the United States of America, in congress assembled, that there be, and is hereby, granted to the state of Kansas, for the purpose of aiding in the construction—*First*, of

[1] From Kansas Law Journal.

a railroad and telegraph from the city of Leavenworth, by way of the town of Lawrence, and via the Ohio City crossing of the Osage river, to the southern line of the state, in the direction of Galveston Bay, in Texas, with a branch from Lawrence, by the valley of the Wakarusa river, to the point on the Atchison, Topeka & Santa Fe Railway, where said road intersects the Neosha river; *second*, of a railroad from the city of Atchison via Topeka, the capital of said state, to the western line of the state, in the direction of Fort Union and Santa Fe, N. M., with a branch where this last-named road crosses the Neosha, down said Neosha valley to the point where the first-named road enters the Neosha valley,—every alternate section of land, designated by odd numbers, for ten sections in width on each side of said roads, and each of its branches."

The fourth section of such act prescribed the terms under which the grant is made. It reads as follows:

"Section 4. And be it further enacted, that the lands hereby granted to said state shall be disposed of by said state only in the manner following: That is to say, when the governor of said state shall certify to the secretary of the interior that any twenty consecutive miles, either of said roads or branches, is completed in a good, substantial, and workman-like manner, as a first-class railroad, and the said secretary shall be satisfied that the said state has complied in good faith with this requirement, the said state may cause to be sold all the lands granted as aforesaid, situated opposite to and within ten miles of the line of said section of road thus completed, extending along said completed section of twenty miles of road, and no further. And when the governor of said state shall certify to the secretary of the interior, and the secretary shall be satisfied that another section of said road or branches, twenty consecutive miles connecting with the preceding section, is completed as aforesaid, the said state may cause to be sold all lands granted and situated opposite to and within the limit of ten miles of the line of said completed section of road, and extending the length of said section; and so from time to time until said roads and branches are completed. And when the governor of said state shall so certify, and the secretary of the interior shall be satisfied that the whole of said roads and branches, and telegraph, are completed in a good, substantial, and workman-like manner, as first-class railroads and telegraph, the said state may cause to be sold all remaining lands granted and selected for the purposes indicated in this act, situated within the said limits of twenty miles from the line thereof, throughout the entire length of said road and branches: *provided*, that if any part of said road and branches is not completed within ten years from the passage of this act, no further sale shall be made, and the land unsold shall revert to the United States."

On the ninth of February, 1864, the legislature of the state of Kansas passed an act to accept such grant, and making the Leavenworth, Lawrence & Fort Gibson Railroad the beneficiary. On the twenty-fifth of May, 1864, a copy of the resolution of acceptance was filed in the office of the secretary of state, and is as follows:

"Resolved, by the president and board of directors of the Leavenworth, Lawrence & Fort Gibson Railroad Company, that said company hereby accepts said grant of lands, according to the stipulations of said act of the legislature of the state of Kansas and of the congress of the United States."

The railroad company constructed its road from Lawrence southward to the south line of the state, but never built that portion of its road from Leavenworth to Lawrence. By foreclosure proceedings the property and franchise of the Leavenworth, Lawrence & Fort Gibson

road passed to defendant. And now the state applies for a writ of *mandamus* to compel the defendant to complete its entire line, by building that portion from Leavenworth to Lawrence.

*W. A. Johnston*, Atty. Gen., *Edward Stillings*, and *Thomas P. Fenlon*, for relator.

*James Hagerman*, for defendant.

BREWER, J. I shall notice but a single question, for that is decisive. The relator does not insist that by the charter authorizing the railroad company to build its road from Leavenworth, a duty was imposed to complete the whole line which can be enforced by *mandamus*, but rests the case upon the land grant and its acceptance, claiming that thereby a contract obligation was assumed by the company which the courts will enforce by *mandamus*. Conceding, for the purposes of this case, that contract obligations of a similar nature may sometimes be enforced, yet where the parties in their contracts expressly provide a penalty for a breach, such penalty will exclude any other remedy; and in this contract the parties have named a penalty for any breach. The grant provides that upon the completion of each consecutive 20 miles of road it shall become operative as to alternate sections, and that, upon the failure to complete the road within 10 years, the unearned lands revert to the United States. In other words, this reversion or forfeiture is the penalty for failure to complete the road. The grant does not prescribe at what point in the line the work shall be commenced. It was within the option of the company to commence at Leavenworth, the northern *terminus*, or at the southern boundary of the state, or at any intermediate point.

It might have commenced at the northern and southern *termini* at the same time, and, upon the completion of 20 miles from each *terminus*, would have been entitled to the alternate sections adjacent thereto. When it completed any 20 consecutive miles, it earned the alternate sections adjacent, and if it failed to complete any portion of the road within 10 years, it lost all interest in the adjacent lands. Suppose it had never built a mile of road during the 10 years, and so earned none of the lands, could it be seriously claimed that *mandamus* would lie to compel such construction in the face of this provision,— that by its failure the whole grant had failed; and if that be true in case of total failure, is it not equally true in case of partial failure? The parties prescribed the terms of the contract, and what should be the result in the case of a failure of the beneficiary to perform. As was well said by the counsel for the defendant, this application in some respects represents a bill for a specific performance; and where the whole consideration has failed, and the plaintiff is powerless to perform on his part, would a court of equity compel a defendant, receiving nothing, to perform? Clearly, the defendant would be entitled to receive the consideration if obliged to perform his contract, and if the consideration was lost, the contract to perform would not be enforced. The case of the *State* v. *Southern Minn. Ry. Co.* 18 Minn.

40, (Gil. 21,), arose upon a very similar state of affairs, and is very closely in point, and the conclusions reached by that court are in accord with the views above expressed.

The motion to quash the writ will be sustained, and judgment accordingly.