JUDGB BULLITT
delivered the opinion op the court:
The appellant’s board of directors was authorized by its charter to borrow, on its credit, a sum not exceeding $50,000. The board authorized its president to borrow $30,000, and, as security therefor, to execute a mortgage “upon the road and its property, &c.” The president executed a mortgage to the appellee, Metcalfe, as trustee, upon “the said railroad with all its rights and privileges” to secure its bonds for said $30,000. The bonds were dated January 1, 1860, and payable ten years after date, with interest payable semi-annually.
In September, 1860, Metcalfe, as trustee, filed a petition alleging that said bonds had been “sold to divers persons,” and that the appellant had failed to pay the interest due July 1, 1860, and by amended petitions, the last of which was filed at the March term, 1862, he alleged that three other instalments of interest were due and unpaid. At the same term the court rendered a judgment that Metcalfe recover of the appellant the interest then due, ($3,600,) that the mortgage be foreclosed, and that the mortgaged property be leased to the highest bidder for a term of eight years from January 1, 1862, to pay to Metcalfe said sum, and also the interest thereafter to accrue and the principal when the same should become due; and if no one would lease the property on those terms, then that it be sold to the highest bidder to pay said principal and interest, and that for any surplus it might bring the commissioner should take bonds to himself for the benefit of those concerned. From that judgment this appeal was taken. ■
1. A demurrer to the petition, because the bond holders were not parties to the suit, was overruled, and presents the first question to be considered.
It is contended that Metcalfe had a right to sue, without making the bond holders parties, under sec. 33 of the Code, which declares that “an executor, administrator, guar *203 dian, trustee of an express trust,” and other fiduciaries therein mentioned, “may bring an action in his own name without joining with him the person for whose benefit it is prosecuted.”
In the case of Anderson vs. Watson, (3 Met. Ky. Rep., 509,) it was held that a guardian cannot sue in his own name for personal property of his ward unlawfully detained by another, and the court said: “The guardian can, and could before the Code, sue in his own name upon a note taken by him for money of his ward. Under the 30th section of the Code, declaring that every action must be prosecuted in the name of the real party in interest, except as provided in section 33, it might have been necessary to sue in the infant’s name upon such a note, but for the provision in section 33 relating to guardians. In our opinion, the effect oí section 33, so far as it relates to guardians, is to enable them to sue as they could have done before the Code, without joining the wards in the action.” This reasoning applies to the provisions of section 33 concerning trustees. Under the old practice a trustee could sue at law for property to which he held the legal title. Section 30 might have made it necessary to bring such a suit in the name of the beneficiary, but for the provision in section33. So, under the old practice, the trustee might sue in equity without making the cestui que trust a party, in cases where the trustee was entitled to receive and hold the money or property for the benefit of the cestui que trust. (Calvert on Parties, 212—15.) This rule might have been changed by section 30, but for the provision in section 33. But under the old practice a trustee, under a mortgage made to secure the payment of money to others, could not sue for a foreclosure and sale without making the cestuis que trust parties. (Story’s Eq. Pl., sec. 201.) And, in our opinion, the framers of the Code did not intend to give such right to such a trustee. The cases of McClanahan vs. Beasly, (17 B. Mon., 111,) and Newport vs. Taylor's heirs, (16 B. Mon., 781,) are cases in which the trustee could have sued under the old practice without making the beneficiaries parties. But Metcalfe has no right to receive either the principal or interest of the mortgage bonds, payment of which he seeks to *204 enforce. The bond holders were therefore necessary parties to the suit, unless, as is also contended, xVfetcalfe had a right to maintain the action under section 37 of the Code, which declares that,‘‘where the question is one of a common or general interest of many persons, or where the parties are numerous and it is impracticable to bring them all before the court within a reasonable time, one or more may sue or defend for the benefit of all.”
Here are two distinct grounds upon either of which one person may sue for the benefit of others, viz: 1, where the plaintiff has a common or general interest with many others; 2, where the persons interested, but not having a common or general interest, are numerous and it is impracticable to bring them all before the court within a reasonable time.
Metcalfe’s right to bring this action cannot be maintained upon the first ground, 1, because he sued as trustee and not as bond holder, and there is no common or general interest between the trustee and bond holders; 2, because he failed to state the number of bond holders, or even to allege that there are many of them. Nor can it be maintained upon the second ground, because he has failed to allege or otherwise to show that the bondholders are numerous and that it is impracticable to bring them all before the court within a reasonable time. We do not suppose that the framers of the Code meant to authorize a person having no interest in a suit, nor any duty to perform concerning it, to sue for the benefit of the persons interested, however numerous they may be. And if Metcalfe had been a naked trustee, with no duty to perform except to hold the legal title for the benefit of the bond holders, we doubt whether he could have maintained the action, however numerous he might have shown them to be. But the mortgage declares that, “upon failure of said company to pay the interest or principal of said bonds when due and demanded, the said trustee shall proceed by due course of law to subject the said railroad and all its effects to sale to satisfy the amount claimed and due.” In our opinion, as the deed made it the duty of Metcalfe to sue for a sale of the road, he might have *205 maintained the action if he had shown that the bond holders were numerous, and that it was impracticable to bring them before the court withing a reasonable time. But as he failed to do so, the demurrer for a defect of parties should have been sustained.
2. Even if he had shown himself entitled to maintain the action, wdthout making the bond holders parties,'it would have been erroneous to give him a judgment for the money. The court should have retained control over it for the benefit of those entitled to it.
As the errors above mentioned may be corrected upon the return of the cause, it is proper that we should consider several other alleged errors in the judgment and other proceedings of the court below.
3. It is contended that the court erred in refusing to permit the appellant to file an amended answer, offered at the March term, 1862.
The only ground of defense presented by that answer is, that under the charter of the appellant the town of Bardstowh and three districts of Nelson county were authorized to take, and did take and yet hold, a part of its stock, lb is argued that those corporations, by becoming stockholders of the appellant, converted it into a public corporation; and, therefore, that, in deciding what are its powers, we must adopt those strict rules of construction which apply to charters delegating sovereign powers to public corporations. That position is not considered tenable. The character of a corporation depends upon the purposes for which it is formed and the powers conferred upon it, and not upon the character of its stockholders. “It does not alter the character of a corporation, that the State or the United States own a portion of its stock.” (Redfield on Railways, page 6, and cases cited.)
Nor does the principle of construction contended for as applicable to this case depend upon the question whether the corporation is a private or public one. It depends on the character of the powers conferred and the purposes of the organization. The power of a railroad or other private corporation to take private property for its use, being a delegation of sov *206 ereign power, must be construed as it would be if delegated to a municipal corporation; whilst the powers of private and public corporations, with respect to their property, are govern-erned by the same principles and, in the absence of express provisions of law, depend upon the purposes for which the corporation was formed. As the answer presented no fact material to the defense, the motion to file it was properly overruled.
4. It is contended, that the appellant had no power to mortgage its road or franchises. This question, and the next one that we shall consider, were raised by a general demurrer to the petition.
Generally, a private corporation has an implied power to do whatever may be necessary to execute its express powers and to accomplish the purposes for which it was formed. The ap-. pellant was expressly authorized to borrow this money, but was not expressly authorized to make a mortgage. Had it not an implied power to do so? It cannot be doubted that a manufacturing corporation having power, express or implied, to borrow money might, unless expressly prohibited, mortgage its property to secure the debt. But it is contended that a railroad corporation stands upon a different footing, because its road is built for public use as well as for the profit of its stockholders; that it is under a duty to the public to keep its road in repair and carry on its business for the transportation of freight and passengers; and that it cannot relieve itself from those duties by conveying its road away.
These views seem to be sustained by several English decisions. At any rate, it seems to be settled in England that a railway company cannot, without express authority from Parliament, assign or mortgage or lease its road, upon the ground that it is against public policy. An examination of several of those cases does not enable us to s' te the precise views of public policy out of which that doctrine sprung. It probably arose in part out of a general statute which is not in force here. Judge Redfield, however says: “The ground upon which the decisions in England and America, which hold the franchises of corporations not. to be assignable, ex ept by con *207 sent of the Legislature., rest, is mainly the same as that upon which it has been held in this country, that such franchises are beyond the legislative control, namely, that the charter constitutes a contract between the sovereignty and the corporation on the one part for the grant of certain privileges and immunities, and, upon the other, for the performance of certain duties and functions which are deemed an equivalent or consideration.
* * The state confers upon railways sorhe of its most essential powers of sovereignty, that of eminent domain, and of a virtual monopoly,\in the transportation of freight and passengers, and in return therefor, stipulates for the performance of those duties by the corporation. The corpoi-ation have no more right in equity and justice to transfer their obligations to other companies, or to natural persons, than the State has to withdraw them altogether.” (Redfield on R., p. 422, note 14.)
The doctrine, according to Judge Redfield, rests upon the ground that the corporation is under an obligation to the state to build and operate its road. Such was formerly the rule in England, even as to a railway corporation that had not made an express undertaking to that effect and to which no exclusive privileges had been granted. (Redfield on R:, sec. 192.) Bu-j concerning that class of cases, the doctrine seems to have been overruled in England, and has never prevailed in America. (Id. sec. 192, and notes.) The appellant did not expressly undertake to build the road authorized by its charter; nor did its charter expressly declare that it should do so; nor was any exclusive right to do so conferred upon it. In our opinion the appellant was not bound to commence the road, nor to com-píete it after commencing, nor to put it in operation after completion, nor to continue it in operation. It might have forfeited its charter by non user, but was not bound to use it. So long as it shall avail itself of the privileges conferred by its charter it will be liable to the burthens thereby imposed. Butin our opinion neither the public, nor any individual not connected with it, can compel it to exercise its corporate franchises or make it pay damages for failing to do so. The doctrine under consideration has, therefore, no foundation in this case, if the ground on which it rests is earnestly stated *208 by Judge Redfield. Nor do we perceive any other solid ground on which to place it.
We do not suppose that the appellant could mortgage its corporate existence, or any prerogative franchise conferred upon it. But the right to build and use a railroad is not a prerogative franchise. It has indeed been said that “both currency and internal communication between different portions of the state are exclusively the prerogatives of sovereignty;” (Redfield on R., p. 23;) and that “the right to build and use a railroad and take tolls or fares, is a franchise of the prerogative character, which no person can legally exercise without some special grant of the Legislature.” (Id.,p. 23, note 1.) Possibly these passages were not designed to mean more than this: a road cannot be made over the lands of unwilling proprietors except under authority from the State; aud the State, in order to encourage internal improvements, may grant to a corporation or individual the exclusive right to build a road between two points. In the absence of any positive law upon the subject our opinion is, that an individual has .as much right to build a railroad over his own land or the land of others, with their consent, as he has to build a stage or a wagon, and as much right to use the former as the latter in carrying freight and passengers for pay.
The denial of the right of a railroad corporation to transfer its road has sometimes been based upon considerations of general convenience and public interest, and upon the ground that the corporation having been chosen by the Legislature as the fit depositary of the right to construct and operate the road, should not be permitted to transfer it to irresponsible parties. To this argument several objections present themselves. The appellant’s directors, in authorizing this mortgage to Metcalfe, declared themselves “satisfied that, to furnish and complete the road, they will require the sum of $30,000 in addition to the means at their command.” Assuming, as we must do, that the loan was necessary to complete the road, and assuming it to be probable, as we may do, that the loan could not have been effected without a mortgage, considerations of general conven *209 ience seem to be on the side of the power to make the mortgage rather than against it.
The public had an interest in seeing the road constructed and operated according to the terms of the charter. But whether it shall be thus operated by A or B, by an individual or a corporation, does not seem to be a matter of any interest whatever to the public. Under the charter of the appellant its road, whilst held by it, is under the control of its stockholders. A single person, by purchasing all the stock,' can control the road as completely as if he owned it individually. A purchaser under its mortgage would take the road subject to the terms of the charter designed to protect the public, and would be bound thereby as fully as the corporation is.
We perceive no reason to suppose that a purchaser of all the property of appellant would be less responsible, in a pecuniary point of view, than the appellant. Nor do we perceive any other reason to suppose that the individual responsibility of, the purchaser would not be quite as beneficial to the public as the corporate responsibility of the appellant. General convenience requires that the appellant shall in some manner be compelled to pay the money it borrowed. But it is contended that this should be done by merely subjecting the accruing profits. To do that effectually it might be necessary to appoint a receiver to take charge of the road, because under the management of the directors it is possible that, no profits might accrue, whilst under a different, management the road might be profitable. Yet every argument against allowing the appellant to mortgage its road applies with equal force against the appointment of a receiver to control it, with perhaps the additional argument that a receiver would not be personally liable, like a purchaser, as a common carrier.
That a mortgage by a railway company to secure money borrowed for the construction of its roatj. is not opposed to the public policy of this State, is indicated by the general course of legislation upon the subject. We believe that all the railroads in the State, except that of the appellant, were constructed under charters authorizing such mortgages; and mortgages made by the Covington and Lexington Company, and *210 by tbe Lexington and Big Sandy Company, without expresa authority either to make a mortgage or to borrow money, were afterward ratified by the Legislature. And we are not aware of an instance in which the Legislature, when applied to, has refused to confer such power or to ratify the exercise of it.
The facts, that the appellant voluntarily mortgagedits property to secure the money which it was expressly authorized to borrow, and that the bond holders invested their money upon the faith of the mortgage, furnish, in our opinion, a sufficient distinction to relieve this case from the operation of the decision in the case of Vimont vs. the Winchester & Lexington Turnpike Co., (5 B. Mon., 1,) in which it was held that a turnpike road could not be sold for a general debt of .the corporation. If the decision in that case could be regarded as denying that property or franchises, in the use of which the public have an interest, can be assigned, we might perhaps hesitate to follow it, in view of several other decisions of this court. In Jouett vs. Lewis, (4 Litt., 100,) the vendee of a turnpike road was held liable upon his covenant to keep it in repair without any question being made as to the validity of the sale. In the Trustees of Maysville vs. Boone, (2 J. J. Mar., 227,) a ferry franchise was held to be alienable. And in McCauley vs. Givens, (1 Dana, 261,) a lease oí a ferrjr under an order of court was held to be valid. Our decision rests upon the ground that the appellant, having been authorized to borrow this money, had implied power to execute a mortgage to secure its payment. The American decisions, cited in Peirce on Railroad Law, chap. 20, and Redfield on Railways, sec. 235, note 19, present such a conflict of opinion that we have felt free to consider the question as an open one, and have not deemed it advisable to attempt to sustain our opinion by referring to cases which are peihaps countei-balanced by opposing authorities.
5. It is contended that the mortgage of the “railroad with all its rights and privileges” was not authorized by the resolution of the directors, which authorized a mortgage of “the road and its property, &c.”
*211 Lord Coke, in speaking of &c., as used by Littleton, says that “it doth imply some other necessary matter.” (Com. 17 a.) Jn our opinion, the directors must be regarded as having used it for some purpose. Perhaps no effect could have been given to it if there had been several matters, to either one of which it might possibly have been designed to apply. But the appellant held nothing except its road and other property and its franchises. There was nothing to which the phrase &e. could have been designed to apply except, the franchises, and we therefore regard it as having been used to embrace them.
Moreover, as the object was to secure the mortgage debt, and as the road would be of little or no value without the right to use it as a railroad, our opinion is that the directors, in authorizing a mortgage of the road and its property, must have designed a transfer of the right to operate the road.
6. It is contended that, though the mortgage is valid, no sale should be ordered until the principal of the bonds shall fall due. In discussing the first question above considered we recited the condition of the mortgage concerning the sale of the property. It authorizes a sale, upon the failure to pay either the-interest or principal, “to satisfy the amount claimed and due.” There is no provision that the principal shall become due upon., a failure to pay interest. The principal is not due, and until it; shall become due, the appellant will have no right to,, pay it, and the bond holders can have no right to insist on payment;.of it by foreclosure or otherwise. But they have a rigiit to a sale for the interest due. If the property was divi-dble it would be proper to order a sale of only so much as might satisfy the amount due. But it is not susceptible of division, and must therefore be sold or leased as an entirety. . (Cauffman vs. Sayre, 2 B. Mon., 208-9; Bank of Ogdensbturg vs. Arnold, 5 Paige's C. R., 40; Walker vs. Hallett, 1 Ala. R. N. S., 393.) As it seems probable that the property is worth much more than, the amount of the debt and interest, our opinion is, that, if'the appellant prefers that course to be taken, the property should be leased by public auction, for the shortest term that will bring the amount due and the accruing interest and principal,, as the same shall become clue. If no one will take it lor, a *212 terra of years, then it should be sold absolutely. The appellant should have an opportunity to elect whether or not the property shall be offered in the first instance for a term of years. The lessee or purchaser should be required to give bonds with good security, personal or real, to. be approved, by the court, for the purchase money, including the accruing interest and principal of the mortgage bonds, and a lien on the property or term should be reserved as additional security.
If the property should be leased, the lessee should be required to give a covenant, with good security, to be approved by the court, to keep in good repair the road, cars, and other property not consumable by use, such as fuel and oil, and to return the same to the appellant, at the end of the term, in as good condition as it may be in when received; and to prevent future controversy with reference thereto, the court, before ordering a lease, should cause an inventory to be made, by one or more commissioners, of said property, its value, condition, &c., which should be filed in the cause and be declared in the decree, ordering the lease, to be conclusive evidence of the condition and value of said property at the time of the lease.
We need not consider the question made by appellant’s counsel as to the failure of the appellee to show that the mortgage was under the seal of the corporation, as the appellant, by an entry of record in this court, has waived the error, if any, with reference thereto.
The judgment is reversed, and the cause remanded for further proceedings, not inconsistent with, this opinion.