CASE 3—PETITION EQUITY—SEPTEMBER 29.

# Louisville and Nashville Railroad Company vs. Covington, &c.

APPEAL FROM WARREN CIRCUIT COURT.

By deed dated February 11, 1836, E. M. Covington conveyed to the corporators of the Bowling Green Portage Railway Company certain rights of way, sixty feet wide, through a portion of the town of Bowling Green, and thence to Big Barren river, upon the expressed condition that a railway should be completed thereon within three years, which condition was performed. The Louisville and Nashville Railroad Company, having come into possession of the Portage Railway and all its rights of way, &c., by purchase, and having taken up the track, ceased to use and wholly abandoned the use of that part of said right of way which lies between Adams street and the town terminus, and having sold and conveyed a part of it next to Adams street to a private individual, for private uses, thereby cutting themselves off and preventing themselves from using any part of said right of way between Adams street and the town terminus; but the said Louisville and Nashville Railroad Company have continued to use the remainder of said right of way from Adams street to Big Barren river for the purposes and uses contemplated in the conveyance. The heirs of E. M. Covington sued for the entire right of way conveyed by him, alleging that the same had been abandoned, and that the Louisville and Nashville Railroad Company had no right to purchase or hold any part of it. *Held*—That the law imposed the additional condition upon the conveyance that the right of way should continue to be used for the purposes contemplated, and that a reversion would result from abandonment or non-user. That as to that part of the right of way from Adams street to the town terminus, the abandonment was complete, and plaintiffs were entitled to recover it. But, as to the remainder of the right of way, which has continued to be, and is still, used for a railway, as contemplated in the conveyance, there is no forfeiture or abandonment, and that being so used, Covington's heirs have no right to question the validity of the conveyance to, or the title of, the present occupant.

J. R. UNDERWOOD,                                        For Appellant,

CITED—

*Civil Code,* sec. 529.

*Ib., secs.* 530, 531.

*Angell & Ames on Corporations,* p. 191, *sec.* 195.

*Ib., p.* 891, *sec.* 773.

*Ib., p.* 899, *secs.* 776 *and* 777.

*Acts* 1835–6, *p.* 121.

*Acts* 1850–1, *vol.* 2, *p.* 442.

*Acts* 1853–4, *vol.* 2, *p.* 195.

*Acts* 1855–6, *vol.* 1, *p.* 188.

S. D. BLACKBURN,                                        For Appellees.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Covington and others, heirs of their deceased ancestor, E. M. Covington, brought suit against the Louisville and Nashville Railroad Company and George Lehman to recover the lands granted by their ancestor to Pitts, Vanmeter, McReery, and Skiles, by deed dated February 16, 1836. Said grantees were corporators by an act of the Legislature, approved five days before the date of said deed, incorporating the Bowling Green Portage Railway Company. Said deed conveyed the right of way, and sixty feet for the same, through several lots in Bowling Green, and through the land between the town and Big Barren river, and a lot, containing some three acres, for depot purposes on the river, and another lot of three acres, adjoining the depot lot, for mill purposes—the road-bed and depot upon the condition that a railway should be built within three years; the mill lot upon condition that a steam merchant mill should be erected within three years.

The Bowling Green Portage Railway Company having been duly organized under the act of incorporation, said

Pitt, Vanmeter, McReery, and Skiles, January 16, 1837, conveyed said right of way, lands and lots, to it.

The portage railway seems to have been erected in due time ; a costly steam merchant mill was also, within the period designated, completed, but was soon thereafter destroyed by fire.  Another was then erected at a cost of several thousand dollars, and it was likewise unfortunate ; and also had seven thousand dollars' worth of lumber so destroyed.

The corporation seems to have kept up its organization, having a president, and perhaps other officers, but likely not prospering, when Skiles, having purchased a very large portion of the stock, and the grantor having died, these same heirs filed a suit against Skiles, October 28, 1851, asserting a 'non-compliance with the conditions, a forfeiture of the company's rights under said deed, and asking its cancelment, and that the possession of the lots and land conveyed be adjudged to them.

This was refused by a final judgment, July 17, 1852, and their petition dismissed absolutely.

October 18, 1853, Skiles and wife, by deed, conveyed the Bowling Green Portage Railway, with all its property, &c., to the Louisville and Nashville Railroad Company, which company have taken up the light flat bars on all this road, ceased to operate it with horse-power as it was first done; have laid that portion of the road from Adams street, in the town, to the river, with a heavy bar, and operates it with a locomotive and steam power, but have abandoned the use of that part of the road from Adams street to the terminus, as originally fixed in the town, as evidenced not only by their taking up the rails and failing to replace them, but also by the more decisive act of selling and conveying abso-

lutely to Lehman, February 23, 1859, a large portion of the road-bed immediately adjoining Adams street, in lot No. 97, thus converting it entirely to individual and private uses, and excluding itself from the remainder of the road or right of way between Adams street and the town terminus.

The court adjudged that the plaintiffs were barred by their suit and judgment in the case against Skiles from asserting any cause of forfeiture previous thereto, and in this we concur. The court also adjudged that no forfeiture had been manifested as to that part of the road, land, and lots from Adams street to the river, but as to that portion between Adams street and the town terminus, there was an abandonment, and, consequently, a forfeiture, and adjudged the same to plaintiffs. From this both parties have appealed. We do not regard this as a suit "to vacate or repeal a charter," and, therefore not embraced by *sections* 529, 530, *and* 531, *Civil Code;* but it is a suit to reclaim the title forfeited by a non-compliance with the conditions of the deed, and does not necessarily involve the question of forfeiture of the charter. A company may still exist, and be entitled to all its chartered privileges, yet it may forfeit the right to some of its property, because of a non-performance of the conditions of the conveyance. In such case those entitled to property by virtue of such forfeiture are the proper and essential parties to sue. It is also insisted that the Louisville and Nashville Railroad Company could not purchase the Portage Railway, and that Skiles and wife could not sell and convey it, as this could only be done by the proper corporate act of its duly authorized officers, under its corporate seal, and not by a stockholder, though he own nearly all its stock. But as said by this court

in *Bardstown and Louisville Railroad Company vs. Metcalfe* (4 *Met.*, 209), the public has an interest in seeing the road constructed, and operated according to the terms of the charter. . But whether it shall be operated by A or B, by an individual or a corporation, does not seem to be a matter of any interest whatever to the public.

And with more force may it be said that the object of the grantor, Covington, was to enhance the value of his own lots and lands by the increase and cheapening the facilities of intercommunication . between the town and slack-water navigation on the river, and by building up trade at the river depot, surrounded by his lands; and so that the road was really completed and operated, it matters not to him or his heirs whether A or B, an individual or corporation, operates it. It is not alleged that the present mode of operating this part of the road is injurious, or less valuable, to plaintiffs than the first mode, and it may be fairly presumed that it is beneficial.

However the stockholders of the Louisville and Nashville Railroad Company might complain that their funds had been improperly converted by the purchase and operation of another road, we apprehend the grantor nor his heirs, who are not injured, but perhaps benefited, can be heard to complain and deny its right to purchase.

But if it be conceded that this corporation had no right to make the purchase, yet so long as the Bowling Green Portage Railway is operated beneficially, at least not injuriously, to plaintiffs, they have no right to complain, or to inquire into the means by which it is operated. Whether the original company, or their agents or lessees or vendees operate it, can be of no earthly consequence to them, so it be properly operated; there-

fore, it is wholly unnecessary to determine in this suit whether the Bowling Green Portage Railway Company could legally sell, or whether the Louisville and Nashville Railroad Company could legally purchase, or whether Skiles and wife could legally sell it.

The deed of Covington was not for a term of years, but the conveyance of the right of way in perpetuity, upon the only expressed condition that the railway should be completed in three years—to which, doubtless, the law attached another condition, to-wit: that the railway should be kept up and operated—and as this express condition was performed, no forfeiture can occur under the condition annexed by law until the road shall be abandoned and cease to be operated.

Those claiming as purchasers from the original Portage Railway Company being entitled to its advantages and rights, until these shall be questioned by competent parties, they must observe the duties and responsibilities of said company; and so long as these are observed, persons not injured, and in nowise interested as to who shall operate the road and discharge these duties, will not be permitted to inquire into the legality of the contract; neither can the grantor nor his heirs, under such a conveyance, be heard to say the company to which the grant was made have sold out and thereby dissolved. Whilst they derive the benefit of the consideration for the conveyance they cannot be heard to say it is from a stranger who has no legal right to confer it, and therefore, as the grantee does not continually confer it, the grant is at an end, a forfeiture has accrued, and they reinvested with the original title.

The abandonment of the Portage Railway from Adams street to the town terminus is made out by more unequivocal and positive acts of intention than mere non-

user; and therefore the title to that part of the road had become forfeited, and by operation of law should reinvest in plaintiffs because of such unequivocal acts. Whilst it might take twenty years of non-user alone to evidence an intention of abandonment, a conveyance for private use, wholly incompatible with the use of the land for railway purposes, manifests so clearly an immediate intention to abandon that part of the road so obstructed, that no non-user for any length of time would be essential to determine the fact of abandonment.

We therefore fully concur with the chancellor, that, as to that portion of the road from Adams street to the river, there is no cause of forfeiture, and the judgment as to this is affirmed.

We also concur with him, that, as to that part of said road from Adams street to the town terminus, an intention of, and actual abandonment, is fully made out, and the judgment as to this is also affirmed.