THE PEOPLE v. THE DETROIT, GRAND HAVEN & MIL-
WAUKEE RAILWAY COMPANY.

*Constitutional law—Railroad companies—Residence crossings.*

1. Act No. 165, Laws of 1889, in so far as it provides for taking the property of a railroad company for public use without compensation, is unconstitutional and void.

2. Railroad companies cannot be compelled to erect and maintain residence crossings at their own expense, for the use and benefit of individuals, when no statute existed at the time of the construction of the road requiring such action on their part.

Error to Oakland. (Moore, J.) Argued January 24, 1890. Decided February 20, 1890.

Debt to collect penalty for failure to provide a residence crossing under Act No. 165, Laws of 1889. Defendant brings error. Reversed, without a new trial. The facts are stated in the opinion.

*George Jerome,* for appellant.

*S. V. R. Trowbridge,* Attorney General, and *George W. Smith,* Prosecuting Attorney, for the people.

GRANT, J. The people bring their suit under Act No. 165, Laws of 1889, to recover a penalty for the failure

of the defendant to provide an open, unobstructed residence crossing, suitably guarded, in front of the residence buildings of one Henry Fall, in the township of Bloomfield, Oakland county. Judgment was rendered against the defendant for $140, and it appeals.

The following facts were stipulated, and constitute all the evidence that was introduced upon the trial, viz.:

"1. That the defendant is a corporation, and owns and operates a railroad between the city of Detroit and the city of Grand Haven, in the State of Michigan, which runs through the township of Bloomfield, in the county of Oakland, in said State.

"2. That at a point on defendant's road about one mile northerly of the village of Birmingham, in said county of Oakland, one Henry Fall owns a farm on the northerly side of said road, and has his residence there adjacent to the said railroad, and the railroad is between his residence and the usually traveled public highway, and immediately adjacent to said road, and is parallel to said road.

"3. That said Henry Fall has a farm crossing, which was provided and is maintained by the defendant company, with suitable openings and gates thereto, affording him ingress and egress across defendant's road, between his residence and the highway.

"4. That the defendant and said Henry Fall derive title to their said real properties independently from the same common remote grantor; the said Fall having purchased since defendant's right of way was obtained and its road constructed.

"5. That the defendant company has been in possession of the right of way through said township of Bloomfield, adjacent to said Fall's farm and residence, and in operation of its railroad, for more than forty years last past.

"6. That the Commissioner of Railroads, the Hon. John T. Rich, on November 16, A. D. 1889, made an examination, finding, and order on complaint of said Fall, all substantially as alleged in the declaration, a copy of which order was duly served upon the defendant company as alleged, requiring it, in pursuance of the provisions of section 15, article 4, of Act No. 198, Session Laws of 1873, as amended by Act No. 165, Session

Laws of 1889, within ten days from said date, to construct an open, unobstructed residence crossing, suitably guarded, substantially as provided for highway and street crossings, and thereafter to efficiently maintain the same, so as to give Henry Fall a near, safe, and convenient outlet or passage way from his residence or real property over defendant's track to the highway running in front of the same, to wit, at the place of residence of said Henry Fall, on the line of defendant's railway as aforesaid.

"7. That defendant has neglected and refused, and still neglects and refuses, to comply with such order, substantially as alleged in plaintiffs' declaration."

That portion of Act No. 165, above mentioned, imposing upon railroad companies the duty to provide and maintain these crossings, reads as follows:

"And in cases where a railroad is immediately adjacent to or laid upon a highway, * * * open, unobstructed residence crossings, suitably guarded, substantially as are provided for highway and street crossings, shall be provided and maintained by the railroad corporation operating said railroad: *Provided,* The same shall be so ordered by the Railroad Commissioner."

The defendant contends that this provision infringes section 14, Art. 18, of the Constitution of Michigan, which provides that—

"The property of no person shall be taken for public use without just compensation therefor."

The argument for plaintiffs is:

1. It is an exercise of the general police power over railroads.

2. It is an exercise of the police power regulating the special duties imposed upon railroad companies.

It is apparent that this provision of the statute, enacted in 1889, imposes additional burdens and expense upon railroad companies. It requires them to construct and maintain residence crossings at their own expense, in addition to highway and farm crossings. Except as

imposed by statute, no obligation exists on the part of a. railroad company to give a right of way over its road to private individuals. While it is a *quasi* public corporation, still, in the holding and use of its land, it is entitled to the same protection as are natural persons.

The following propositions can be regarded as well settled:

1. The police power of the State over railroads includes all those regulations which are necessary for the safety and protection of persons and property in transit over them, or crossing them upon the public highways. The State may therefore require the use of air-brakes, the erection of fences and cattle-guards, the stopping of trains at the crossings of other railroads, the use of bells and whistles, and many other things which will readily suggest themselves. This principle is commended by good sense, and is too well established to require the citation of authorities.

2. The power to require railroads to erect and maintain farm crossings has been the policy of this State from the beginning. Comp. Laws 1857, § 1987. The original charters of the Detroit & Pontiac Railroad Company and of the Oakland & Ottawa Railroad Company, to which the defendant succeeded, require it. Nearly, if not all, the railroad companies of Michigan have acquired their rights of way under statutes containing this provision. They have condemned lands and paid the owners compensation with this in view. There has therefore been no hardship or injustice in these requirements, nor in compelling the companies to fulfill them. So far as I have investigated, our sister states have similar statutes, and their constitutionality has been generally sustained as within the police power lodged in the State.

3. Municipal authorities, although expressly authorized

by statute, cannot lay out a highway across the road-bed of a railroad, and compel the erection and maintenance of cattle-guards, etc., without compensation. The statute conferring this authority was held to be repugnant to the Constitution of Michigan, and void. *People v. Railway Co.*, 52 Mich. 277 (17 N. W. Rep. 841); *Chicago & G. T. Ry. Co. v. Hough*, 61 Id. 507 (28 N. W. Rep. 532); *Grand Rapids v. Railway Co.*, 58 Id. 641 (26 N. W. Rep. 159).

4. The land of a railroad company can no more be taken for the use, benefit, or convenience of an individual than can the property of a natural person. This principle is held applicable to the case of one. railroad crossing the track and road-bed of another railroad. *Grand Rapids, N. & L. S. R. R. Co. v. Grand Rapids & I. Railroad Co.*, 35 Mich. 265. Such benefit and convenience are not enough. Something must be shown to fairly bring the case within the general police power which the State may exercise over railroads.

Now, an examination of the record shows that Fall applied for an "open, unobstructed residence crossing, suitably guarded," as required by section 15 of said act. It is not an application for improving, changing, or constructing the farm crossing, referred to in paragraph 3 of the stipulated facts. That crossing, therefore, has no bearing upon the controversy. We pass no opinion upon the duty of defendant to change this farm crossing so as to conform to the requirements of the statute in that regard. That question is not in the case. Nothing in the record shows whether the residence crossing was located in the same place as the farm crossing or not. We must therefore consider this as an application *de novo*, and the sole question in the case to be whether a railroad company can be compelled to make a crossing over its track from a highway to a person's residence, where none existed before.

The answer to the question depends upon whether the facts agreed upon make a case for the exercise of the police power of the State. Plaintiffs concede that the property in this case is not taken for public use. Its taking, therefore, can only be justified upon the ground of police regulation. The burden of proof was upon the plaintiffs. No inference can be drawn, unsupported by proof, to sustain the action of the commissioner, or to bring it within the rule. His action is final only when, as in the verdict of a jury, there is evidence to support it. Fall purchased the premises with the situation just as it is now, and as it has been for many years, possibly forty, the length of time the defendant's railroad has been built. The record is silent as to whether he has any other access to a highway, or as to the character and extent of his business, except that he owns a farm. But whether it is a fruit, grain, or stock farm; whether it contains one acre or more; whether he requires the crossing to drive stock over; or whether he requires it for any other purpose, except for the passage of himself and family,—we are not informed. The irresistible conclusion from the whole record is that Fall's application and the order of the commissioner were made with sole reference to his (Fall's) benefit and convenience.

It is apparent that every open crossing into the public highway across a railroad track increases, rather than diminishes, the danger of travel, by giving animals the opportunity to get upon the track in front of passing trains. These residence crossings cannot, therefore, be justified, on the ground of protection and safety to passengers and property. The statute applies to all residence buildings. If plaintiffs' contention be correct, then a land-owner, across whose land a railroad has been constructed, and who has been amply compensated in damages, may erect twenty or more residence buildings on

the land fronting the railroad and the highway, sell them, together with the lands on which they are situated, and compel the railroad company to construct and maintain as many residence crossings. Such action would seriously increase the dangers of travel, and impose heavy additional burdens upon railroads. If it is the duty of the State to provide access for every citizen to the public highway, so that he may obey the *venire* of the courts, pay his taxes, vote, send his children to school, and exercise all the prerogatives of citizenship, the State cannot perform this duty by taking the property of one citizen, and giving it to another, without compensation.

We therefore conclude—

1. That the act above mentioned, in so far as it provides for taking the property of a railroad company for public use without compensation, is unconstitutional and void.

2. Railroad companies cannot be compelled to erect and maintain residence crossings at their own expense, for the use and benefit of individuals, when no statute requiring them existed at the time of the construction of the road.

3. The facts in this case do not bring it within the power of police regulation.

Judgment must be reversed, and no new trial ordered.

CHAMPLIN, C. J., CAMPBELL and LONG, JJ., concurred with GRANT, J.

MORSE, J. Act No. 165, Laws of 1889, of this State, provides, among other things, as follows:

"And in cases where a railroad is immediately adjacent to or laid upon a highway, and intervenes between said highway or the usually traveled portion thereof and the residence buildings of real property fronting upon said highway, open, unobstructed residence crossings, suitably guarded, substantially as are provided for highway and street crossings, shall be provided and maintained by the railroad corporation operating said railroad: *Provided,*

The same shall be so ordered by the Railroad Commissioner."

I think this provision of the act is ,valid, as a proper exercise of the police power of the State and its control over railroads, as applied to all such roads built *after* its passage; and perhaps it might not be unconstitutional as applied to cases of railroads built and operated before this act took effect, when the residence building was upon the premises before the railroad company ran its road between it and the highway.

But in this case it appears that the railroad company and the residence owner acquired title from the same grantor, and that the railroad company got its title first. Whether the company has a title in fee or only a right of way does not appear, and, if a right of way, whether its title was acquired by condemnation or purchase. Under these circumstances, I concur in the opinion that Mr. Fall, the residence owner, cannot, under this act, compel the defendant to open and maintain at its own expense the crossing provided for in this act. The law cannot be given such a retroactive effect as to destroy property rights in real estate, vested for more than 40 years in the defendant, without compensation, and throw additional burdens for all time upon such real estate,— burdens not contemplated nor necessary for any reason when such property was acquired. This being a penal action, it must be considered under the finding that the defendant ·obtained its title before Mr. Fall purchased his farm, and that both hold their lands by deeds from a common grantor; that the residence was not built at the time the railroad was, or, if built, that the owner of it, this common grantor, received at that time adequate compensation for the inconveniences resulting from the running of the railroad between the house and the highway.

For this reason I agree in the result of this case as announced by my brethren.

But I am satisfied that a railroad company does not stand, as to the exercise of State control, upon the same footing as private persons, and that its property can be subjected to burdens not imposed on the mere owners of private property, used purely and exclusively for private interests and purposes, for the reason that all property devoted to public uses takes on *quasi* public qualities, and is therefore subject to limitations on such use by the State, and to legislative control, when such control seems necessary to the Legislature, and is reasonable; and of the necessity of such control the Legislature is the sole judge, and courts can only inquire into the reasonableness of the methods of such control.   A railroad may be required to fence its tracks and construct cattle-guards and to construct farm crossings.   The railroads of this State have always been subject to regulations of this kind imposed upon them by the State, and no one has doubted the right of the Legislature to regulate and control them in this respect.   And I am not prepared to say that this act could not reach back, and be operative and valid, in a case where the dwelling-house was upon the land at the time the road was built, and the owner of the land acquired his title first, and the company obtained its right of way by condemnation, and the residence owner has no access to any other highway.

In other words, I am satisfied of the authority of the Legislature, under the general police power of the State, to make the regulation as to residence crossings found in this act, and that it is a reasonable one, as applied to cases arising after the act became a law.   Whether or not it can be applied to cases where the conditions of the premises, railroad, and highway are the same as they were before the passage of the act, in my opinion,

depends upon the reasonableness of the regulation as applied to each particular case. While conceding the potency of the police power of the State, I do not think it omnipotent; and as said before, in *Whitney v. Township Board*, 71 Mich. 237, the Legislature cannot arbitrarily and without reason, and in defiance of right, pass any statute it may see fit under this power.

This statute, while reasonable and proper and valid as to all conditions and circumstances of residence crossings coming within its provisions hereafter, cannot be arbitrarily, unreasonably, and in defiance of right applied to the case in hand.