CASE 14.—ACTION BY W. R. EMERSON AGAINST THE
LOUISVILLE & NASHVILLE RY. CO. TO COMPEL
IT TO PUT IN A CROSSING.—March 14.

# Louisville & Nashville R. R. Co. v. Emerson

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiff. Defendant appeals. Affirmed.

Railroads—Construction—Crossing Private Lands—Duty to Construct.—The charter of a railroad company provided that, whenever in the construction of the road it was necessary to pass through the land of any person, the company must provide such person proper wagon ways across the railroad from one part of the land to the other. Held that, notwithstanding a crossing was put in when the railroad originally crossed a tract of land, yet where the tract was subsequently divided into two parts, the railroad company was bound to put in a crossing for that part left without one.

WILLIAM A. NORTHCUTT for appellant.

BENJAMIN D. WARFIELD and JOHN E. DuBOSE of counsel.

### POINTS AND AUTHORITIES.

1. As Emerson did not own the land at the time the railroad was constructed, having purchased only a part of a farm through which the railroad was constructed, about fifty years after the road was constructed, the provisions of appellant's charter making it its duty to provide proper wagon ways across its railroad for persons whose land was divided in the construction of its road does not apply. (Acts, 1849-50, p. 427, section 16; Thompson v. L. & N. R. R. Co., 25 Ky. Law Rep., 531; Stumpe v. Mo. Pac. Ry. Co., 61 Mo. App., 633; L. & N. R. R. Co. v. Pittman, 21 Ky. Law Rep., 1037, distinguished.)

2. A landowner by subdividing his farm into small tracts of land cannot impose upon the railroad company the burden and risk of providing additional farm crossings for persons to whom such small subdivisions may be sold. (Clarke v. Ohio River Railroad Co., 39 W. Va., 732, 20 S. E., 696; Jones Fertilizing Co. v. Cleveland, &c., R. R. Co., 7 Ohio Nisi Prius, 245, 2 Ohio S. & C. P., 511.)

3. The railroad company having complied with its charter obligation by furnishing a passway and crossing over its right of way and track for the owner of the original tract of land, which has been used by the owners of all the land for nearly fifty years, it is the duty of appellee to continue to use that crossing as he has the undoubted right to do. (E. L. & B. S. R. R. Co. v. Killen, 21 Ky. Law Rep., 122; Muir, et al., v. Cox, et al., 110 Ky., 560; Guthrie v. Canadian Pac. R. R. Co., 27 Ont. App., 74; Atchison, &c., Ry v. Conlon, et al. (Kansas) 22 A. & E. R. Ca, 76, 63 Pac., 432.)

4. A railroad company must not be made to bear all the burdens and suffer all the inconveniences in matters of this kind. The court should look to the rights of both parties. (Calcraft v. L. E. & St. L. Ry. Co., 113 Ill., 86.)

SIMS & GRIDER, attorneys for appellee.

1. The charter of the railroad company provides that "When it shall be necessary to pass through the land of any person it shall also be their duty to provide for such person wagon ways across said railroad from one part of the land to the other."

2. We would not contend that the railroad company could be compelled to construct crossings at unreasonable distances, but we do contend that for each body or subdivision of a tract of land containing as much as sixty acres and lying almost adjacent to the corporate limits of a city, and when the necessity is shown as in this case, that it should be compelled to construct wagon ways.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

When the Louisville & Nashville Railroad was built through Warren ocunty, the company was unable to agree with Mrs. A. R. Strange for the right of way across her tract of 120 acres of land. A condemna-

tion suit was filed in 1858. The value of the right of way was fixed at $383; the strip taken being 66 feet wide, 2,565 feet long, and containing 4.04 acres. A part of Mrs. Strange's tract lay on both sides of the right of way, and during the year 1858 the railroad built for her a crossing from one part of the track to the other. This crossing was used by her as long as she lived. After her death the 120-acre tract descended to two of her children, F. L. Strange and D. B. Strange. They divided the land between them by cutting it into two tracts of 60 acres each by a line running at right angles to the railroad. The crossing made by the railroad company for Mrs. Strange is located on the land of F. L. Strange 110 feet from the land of D. B. Strange, who afterwards sold to W. R. Emerson. Emerson demanded of the railroad that it build him a crossing. The company refused to build it, and he filed this suit to compel the company to put in the crossing. The circuit court adjudged him the relief sought, and the railroad company appeals.

The situation is shown on the accompanying map, on which the spot marked "crossing" represents the old crossing, and the spot marked "X" represents the crossing adjudged to be put in. The Strange farm is

represented by the figures 1, 2, 3, 4. Emerson's part of it is represented by the figures 5, 6, 3, 4. It will also be observed that Barren river runs on both sides of the tract, and that the tract is cut into three pieces by the pike and the railroad right of way.

The rights of the parties depend upon the construction to be placed upon the following provision in the charter of the railroad company: "Be it further enacted, that whenever, in the construction of said road or roads, it shall be necessary to intersect any other established road or way, it shall be the duty of said president and directors so to construct said road across such road or way as not to impede the passage of persons or property along the same; or where it shall be necessary to pass through the land of any person, it shall also be their duty to provide for such person proper wagon ways across said railroad from one part of the land to the other; and if said company shall fail to provide proper wagon ways across said road, as provided in this section, it shall be lawful for any person to sue said company and be entitled to such damage as a jury may think him or her entitled to for such neglect." It is insisted for appellant that it fully discharged the duty resting upon it by virtue of this provision of its charter, so far as this tract of land was concerned, when it built the original crossing, and that it is not required to construct additional crossings when the farm has been subsequently divided up into smaller farms. Reliance is placed upon the words, "in the construction of said road or roads," as showing that the charter provision applies only to conditions as they existed at the time the road was constructed. While there is some force in this, in construing the provsion we must look to the whole of it, and to the intention of the Legislature in enact-

ing it. One construction cannot be given to so much of the section as refers to the public crossings, and a different construction to that part of it which refers to private crossings. As to the public roads, what the Legislature had in mind was that the railroad was to be so constructed as not to obstruct them, and this duty applied not only to the public roads then in existence, but equally to roads opened since or which may be hereafter opened. The duty is continuous. It is not limited to such roads as were then in existence, or to such crossings as the public travel then required, but includes such public crossings as changed conditions may from time to time make necessary.

The question of the proper construction of the section as to private crossings was before us in L. & N. R. R. Co. v. Pittman, 53 S. W. 1040, 21 Ky. Law Rep. 1037, in which the defendant relied on limitation in bar of an action similar to this. There we said: "It was the duty of appellant, when the road was first constructed, to provide proper wagon ways across its road for the use of the landowner whose land was divided by the line of the road, and this duty existed on appellant all the time from the first construction up to the present. What may be a proper and necessary wagon way to-day might not have been necessary at the time of the construction of the road in 1865. At the date of the original construction of the railroad the whole of appellee's farm may have been forest, and at that time no roadway would have been necessary. As it is shown now to be in cultivation, a wagon way is necessary and proper. We are of opinion that the provision of the charter, supra, makes the duty, as well as the liability for a failure, continuing. The question is always in

the present. Is it proper or necessary for the land-
owner to have a crossing over the railroad from one
part of his land to the other? This question answered
in the affirmative, the duty rests on appellant to pro-
vide such crossings."

The crossing which was put in for Mrs. Strange in
1858 may have been all that she required, and all that
was necessary from the condition of the farm at that
time or the way it was used; but as conditions change,
and a necessity for a crossing arises from one part of
the tract of the land to another part, the duty rests
upon appellant to provide the crossing. Were the
statute construed otherwise, it would be substantially
no benefit to the landowners, and the very result
would be brought about which the Legislature aimed
to prevent. The Legislature did not intend that the
building of the railroad should operate as a bar to
the development of the country through which it ran,
and there is the same reason for holding the duty a
continuous one in the case of private crossings as in
the case of public crossings. We do not mean to hold
that a tract of land may be cut up indefinitely into
small lots lying on either side of the railroad. and
that a crossing may be established for each lot. That
question is not now presented. We only decide now
that it is the duty of the railroad under its charter
to put in such crossings as are reasonable and proper
for the use of the land, and that the facts shown here
make it reasonable and proper that the crossing
should be put in.

Our attention is called to Clarke v. Ohio River
Railroad Company, 39 W. Va. 732, 20 S. E. 696, as
sustaining a contrary conclusion. The case so holds,
but it was based upon a statute materially different
from that quoted. The statute there showed on its

face that it was only applied to such crossings as were necessary when the railroad was built, for it concluded with these words: "And no such railroad shall be used for the transportation of freight and passengers until such fences, farm crossings, and cattle guards are built and constructed."

We are also referred to the case of Stumpe v. Missouri Pacific Railway Company, 61 Mo. App. 357. But the statute in that case was also different. It concluded with these words: "If any corporation aforesaid shall, after three months from the time of the completion of its road through or along the lands, * * * fail, neglect or refuse to erect or maintain in good condition any fence, opening or farm crossings, * * * then the owners or proprietors of said lands * * * may erect or repair such .* * * farm crossings," etc.

The operation of the statute necessarily did not extend beyond the completion of the road. The case of Jones Fertilizing Company v. Cleveland, &c., R. R. Co., 7 Ohio N. P. 245, rests upon a similar construction of the statute there before the court. The case of People v. Railroad Co. 44 N. W. 934, 79 Mich. 471, 7 L. R. A. 717, has no application, for this is not a statute passed after the railroad was built, but is a part of its charter, under which it took its right of way from Mrs. Strange in the exercise of the right of eminent domain. In Thompson v. L. & N. R. R. 76 S. W. 44, 25 Ky. Law Rep. 531, the railroad did not intersect Thompson's land.

Judgment affirmed.