**LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Appellant,**

v.

**Osborne SUTTON et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 17, 1969.

Will Tom Wathen, Wathen & Wesley, Morganfield, H. G. Breetz, M. D. Jones, Louisville, for appellant.

Tommy W. Chandler, Providence, Damon A. Vaughn, Madisonville, for appellees.

JAMES C. CARTER, Jr., Special Commissioner.

This is an appeal from a judgment of the Webster Circuit Court requiring the appellant Louisville and Nashville Railroad Company (L & N) by a mandatory injunction, to construct for the appellees (the Suttons) a private crossing over the railroad.

Appellees alleged in their complaint that by deed dated April 3, 1929, they purchased a farm in Webster County, Kentucky, which consisted of four separate tracts as described in the deed to them. They contend that the L & N tracks and right-of-way traverse their land and separate a triangular tract of some three acres from their remaining tracts. The three-acre tract can be reached from the land owned by them only by crossing the railroad right-of-way or crossing the private land of other persons. The Suttons filed suit to compel L & N to provide them with a private grade crossing.

The sole basis of appellees' claim to a private grade crossing rests on Section 16 of L & N's charter from the Commonwealth (Act of March 5, 1850). Section 16 reads as follows:

"Sec. 16. BE IT FURTHER ENACTED, That whenever, in the construction of said road or roads, it shall be necessary to intersect any other established road or way, it shall be the duty of said president and directors so to construct said road across such road or way as not to impede the passage of persons or property along the same; or where it shall be necessary to pass through the land of any person, it shall also be their duty to provide for such person proper wagon ways across said railroad, from one part of the land to the other; and if said company shall fail to provide proper wagon ways across said road, as provided in this sec-

tion, it shall be lawful for any person to sue said company, and be entitled to such damages as a jury may think him or her entitled to, for such neglect."

At the trial evidence was introduced showing that the line of railroad through the appellees' land was not constructed by L & N under its charter. That line, now a part of L & N's route from Henderson, Kentucky, to Nashville, Tennessee, was constructed sometime prior to 1879 by another railroad company or companies, and was acquired by L & N by purchase under a commissioner's deed of record in Webster County dated December 1, 1879, made in connection with a foreclosure sale ordered by the United States Circuit Court for the District of Kentucky. Pursuant to that order, St. John Boyle, Special Commissioner, conveyed to the L & N all the railroad properties and rights of the Evansville, Henderson & Nashville Railroad Company from Henderson to Guthrie, and all the railroad properties and rights of the St. Louis and Southeastern Railway Company (Consolidated), located within Kentucky. No charter provisions of any predecessor railroad company of the L & N were pleaded or introduced in evidence or relied upon in any way by the Suttons.

It is the Suttons' contention that when L & N took title to and commenced operating the railroad acquired by this deed, all duties and obligations imposed by L & N's charter became applicable to its operation of the properties so acquired, including the provisions of Section 16 of L & N's charter.

L & N, on the other hand, contends that its 1850 charter is not applicable to the operation of lines of railroad built by other companies under other charters and subsequently acquired by L & N. It contends that its charter duties as to such lines are only those imposed by the charter under which the lines were constructed.

██ Both reason and precedent support L & N's contention. While it was not established in the trial court exactly what

railroad constructed the track involved in this case, it was established that it was some company other than L & N. It is a presumption of our law that a railroad is a corporation, unless the contrary appears. Madisonville, H. & E. R. Co. v. Commonwealth, 140 Ky. 255, 130 S.W. 1084 (1910). Therefore, it must also be presumed that the constructing company built the road under a charter from the Commonwealth, and assumed the duties and conditions provided for in that charter. It is elementary that a railroad charter constitutes a contract between the company and the state for the benefit of its citizens. Bentler v. Cincinnati, C. & E. Ry. Co., 180 Ky. 497, 203 S.W. 199 (1918). It grants to the company thus formed certain indispensable franchises, such as the power of eminent domain, the right to cross public roads, and the like, which are requisite to the success of the undertaking. In return, the company undertakes to serve the public by constructing and operating its road between the points provided for in the charter, and to comply with whatever conditions the state exacts for the rights granted. Such conditions or duties are obviously intended to apply only to the line of road provided for by the charter. They are the price required by the state for the rights granted in connection with constructing a specific line of railroad, and were not intended to apply to any other or additional lines, absent specific legislative extension. To borrow an analogy from real property law, such duties may be said to "run with the land" of the line of railroad constructed under the charter, and any subsequent party assuming the operation of the road is bound to discharge them.

This last statement is also well established by our case law. Louisville & N. R. Co. v. Covington, 65 Ky. (2 Bush) 526 (1866) involved a voluntary sale of a railroad; Bardstown & L. R. Co. v. Metcalfe, 4 Metc. 199, 61 Ky. 199, 81 Am.Dec. 541 (1862) involved the sale of a railroad under a mortgage, and Louisville & N. R. Co. v. Pierce, 313 Ky. 189, 230 S.W.2d 430, 17

A.L.R.2d 1244 (1950), involved operation of a railroad by a lessee company. In each instance it was recognized that the purchaser or lessee was bound by the original railroad company's charter obligations.

In the present case there can be no doubt that L & N is obligated to carry out any duties imposed by the charter of the company originally constructing the railroad line in operation. The question is, however, is L & N, which did not construct the line in the first instance, bound to carry out the duties its charter would have imposed if it had done so?

We think not. As is pointed out in Bardstown & L. R. Co. v. Metcalfe, supra, the public has an interest in seeing that a railroad is operated according to the terms of its charter, but so long as this is done, it is of no interest to the public what person or corporation operates the road. We do not believe it to have been the intent of the legislature, when granting charters to the several railroad companies, to intend that one company should assume a double charter burden as to any one line of railroad, thereby affording to the public, or to any benefited individuals, a greater advantage than was intended as to a line of railroad when it was originally authorized. Therefore, Section 16 of L & N's charter is not applicable to the road it acquired by purchase in 1879.

The Suttons raise the point that in 1916, some 37 years after L & N acquired the line of railroad in question, it purchased in its own name an additional ten-foot strip of right-of-way through the Suttons' land on which to place a signal and communications pole line. It is contended that this act constituted a "passing through" the Suttons' lands within the meaning of Section 16 of L & N's charter, and that therefore that charter became applicable. We do not agree. The construction of the pole line and acquisition of the land for it was in aid of L & N's discharge of its duty to operate the line of railroad under that railroad's original

charter, and is not significant in this controversy.

■ An additional reason exists why L & N cannot be compelled to furnish the Suttons with a crossing. Assuming, arguendo, that L & N's charter is applicable to the line of railroad involved, the wording of its Section 16 is such as to preclude its operation in this case in view of the state of the record. The specific language of the Section to be considered is "That whenever, in the construction of said road or roads, * * * it shall be necessary to pass through the land of any person, it shall also be their duty to provide for such person proper wagon ways across said railroad, from one part of the land to the other * * *". The reason for the inclusion by the legislature of this wording seems clear. The new railroad would of necessity pass through and divide established farms and tracts of land, and the intent was to prevent a railroad company, armed with the power of eminent domain, from severing a landowner's property and leaving him no practical way to go from one part to another. That provision deals only with parcels of land established under one ownership at the time the road was built through it.

It follows that not every landowner today who happens to own land on both sides of a railroad track constructed under L & N's charter is entitled to benefit of Section 16. To so qualify, it must be shown that the lands on opposite sides of the track constituted one parcel of land at the time the railroad was constructed. An examination of the cases in which Section 16 has figured reveals nothing contrary to this principle. See Louisville & N. R. Co. v. Pittman, 53 S.W. 1040, 21 Ky.Law Rep. 1037 (1899); Thompson v. Louisville & N. R. Co., 76 S.W. 44, 25 Ky.Law Rep. 529 (1903); Louisville & N. R. Co. v. Brooks, 77 S.W. 693, 25 Ky.Law Rep. 1307 (1903); Louisville & N. R. Co. v. Emerson, 125 Ky. 104, 100 S.W. 863 (1907); Louisville & N. R. Co. v. Robbins, 111 S.W. 283, 33 Ky.Law Rep. 778 (1908); Louisville & N.

R. Co. v. Troutman, 137 Ky. 827, 127 S.W. 474 (1910). We think it would hardly have been the intent of the draftsmen of Section 16 to have meant that, after the railroad was built and in operation, a person owning land adjoining one side of the right-of-way could purchase land adjoining its opposite side and be entitled to a crossing. The whole purpose of the section was to protect the communication between parts of one parcel of land divided by the original construction of the line. It is true that this court has held that when an original tract, which was divided by the building of the railroad, is further partitioned into a smaller parcel which continues to be severed by the railroad, L & N must furnish reasonable crossings for both parcels. Louisville & N. R. Co. v. Emerson, supra. However, the reverse does not hold true, and when lands on opposite sides of the railroad under separate ownership at the time of its construction subsequently come under one ownership, no charter crossing need be provided.

In the present case the record shows that the Suttons acquired their land, consisting of four tract descriptions in 1929 from Suttons' father, the father having acquired the tracts in 1906. The record is silent as to whether it was under one ownership on both sides of the railroad at the time of its construction, which showing would be an essential element of proof for one claiming a crossing pursuant to the charter.

■ When one railroad purchases or leases the railroad properties of another for the expressed or implied purpose of operating it, the charter provisions of the vendor or lessor apply to the operation of the railroad property so leased or purchased, and the charter provisions of the vendee or lessee do not apply retroactively to its construction. Not only does this rule prevail generally throughout the other states, 74 C.J.S. Railroads, §§ 331, 333, pp. 854, 855; Elliott on Railroads, 2d Ed. Vol. 1, p. 635, it is clearly the law in Kentucky. Louisville & N. R. Co. v. Pierce, Ky., 254 S.W.2d 943; Ibid, 313 Ky. 189, 230 S.W.2d

430, 17 A.L.R.2d 1244 (involving a lease); Louisville & N. R. Co. v. Covington, 65 Ky. (2 Bush) 526 (involving a voluntary sale) and Bardstown & L. R. Co. v. Metcalfe, 4 Metc. 199, 61 Ky. 199, 81 Am.Dec. 541 (involving a mortgage and foreclosure action.)

The judgment requiring the L & N to install the private grade crossing cannot be sustained and is reversed.

All concur.