## Bentler, et al. v. Cincinnati, Covington & Erlanger Railway Company, et al.

(Decided May 10, 1918.)

Appeal from Kenton Circuit Court
(Criminal, Common Law, and Equity Division).

1. Railroads—Construction and Operation—Articles of Incorporation.—If the articles of incorporation, or the statutes relating to railroad corporations, in terms, or by reasonable implication lay the duty upon a railroad corporation to construct a road, for the construction, maintenance and operation of which it was organized, from one of the termini designated in the articles of incorporation to the other, or to a point designated upon its proposed route, it may be required to do so.

2. Railroads—Construction—Discontinuance.—If neither the articles of incorporation of a railroad company nor the statutes relating

thereto, neither in terms nor by reasonable implication, require the corporation to construct the line, which it is incorporated for the purpose of constructing, it cannot be required to construct the proposed road, nor to complete its construction after it has commenced to do so, in the absence of special circumstances which impose upon it the duty to do so, and a description of the route and termini of the proposed line in the articles is not such a circumstance.

HARRY BRENT MACKOY and S. D. ROUSE for appellants.

ERNST, CASSATT & COTTLE and J. C. W. BECKHAM for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellants, Louis A. Bentler, Richard H. Ranson and Alonzo Shearer, suing for themselves and all other citizens of the city of Erlanger, filed their petition, in equity, against the appellant, Cincinnati, Covington & Erlanger Railway Company and the South Covington & Cincinnati Street Railway Company. It is averred in the petition, and amendment thereto, that the plaintiffs, therein, appellants here, were citizens, residents and property owners in the city of Erlanger and had been such for many years, and that the population of Erlanger and its immediate vicinity amounted to three thousand persons, all of whom had an interest in the cause of action and in the relief sought, similar to that of the plaintiffs; that in the year, 1899, the Cincinnati, Covington & Erlanger Railway Company was incorporated, as a railroad corporation, under and as required by the provisions of chapter 32, article VI, of Kentucky Statutes, for the purpose of constructing, maintaining and operating a line of railroad, and that the articles of incorporation described the line of railroad, which the company was proposing to construct and operate, as a line from Covington, in Kenton county, Kentucky, to the town of Erlanger, in the same county, and to such further points beyond Erlanger, as might thereafter be determined upon, and over and along and upon such streets, bridges, roads, highways and such property of private ownership, as the company might, by due process of law, acquire the right to lay its track and other appliances upon, and that the railway was to be operated by electricity or other improved method of rapid transit. It was, further, averred, that by reason of the authority, which the corporation obtained from its articles of incorporation and the laws of the Commonwealth re-

sulting from its incorporation, it' constructed a portion of the proposed line of railway, commencing at a point in the city of Covington, and extending in the direction of the city of Erlanger, for a distance of five miles, to a point two miles from the latter city, and, in making such construction, it entered upon and used certain streets, roads and highways, and, also, by proceedings authorized by law in favor of railroad corporations, condemned for its use a right of way over the property of certain private persons, and thereby acquired the use of such property for the purpose of laying its track and placed its track thereon; that by a certain agreement between the Cincinnati, Covington & Erlanger Railway Company, and the South Covington & Cincinnati Street Railway Company, which was entered into, while the construction above mentioned was being carried on, but the exact nature of the agreement the plaintiffs did not know, the two corporations have each been operating the road to the point of its completion, and are under similar obligations, as to the construction and maintenance of the road; that by reason of the articles of incorporation and the acceptance of same and the exercise of the rights and privileges granted to them by the articles of incorporation and the laws applying thereto, the appellees were obligated by contract with the state and the people thereof to construct the proposed road to Erlanger, and, although a reasonably sufficient time had transpired for the construction of the road to Erlanger, they had failed to do so; that there was no electric line of railway extending from Erlanger in any direction, and the completion of the road to Erlanger would be of great benefit to its inhabitants and necessary to the full enjoyment by them of their property and business in such city. The relief sought was by mandatory injunction to require the defendants, under the articles of incorporation, to proceed to construct and operate the road from the point of its present terminus to the city of Erlanger. A copy of the articles of incorporation was filed with the petition as a part of it.

A general demurrer was interposed by the defendant corporations to the petition, as amended. The demurrer was sustained by the court, and the plaintiffs having declined to, further, plead, the petition was, by a judgment of the court, dismissed and the relief sought denied, and from this judgment the plaintiffs have appealed.

It will be observed, that the petition does not contain an allegation, to the effect, that the proposed road has ever been located further from the terminus, at which the construction began, than to the point to which it has been completed and is in operation. No special circumstances are averred, such as a granting of aid to the construction of the road by the plaintiffs or any other citizens of Erlanger or the municipality itself, and the acceptance of same by defendants, from which an obligation could be inferred on the part of the defendants to construct the road to that point. Neither, is the existence of any contract by the defendants relied upon, which, it is claimed, would obligate them to construct the road to Erlanger, other than the insistence by the appellants, that the articles of incorporation, under the law, makes a contract between the defendants and the public, which imposed an obligation upon them to construct the road to Erlanger. The use of the bridges, highways and streets and the exercise of the power of eminent domain, for the condemnation of private property, for the use of the defendants, in the construction and operation of the railroad, does not appear to have been exercised beyond the point upon the route, at which the road, as at present constructed, terminates. There is no averment of any facts, which shows that the appellants or any other citizens of Erlanger have suffered any damages in their property or persons by reason of the failure to construct the road to that city, as they are now enjoying all the privileges, benefits and rights, which they had at the time and previous to the execution of the articles of incorporation under which the road was proposed to be constructed. If the railroad had been constructed to that city, doubtless it would add to the convenience of the citizens and the enhancement of the value of their property, but no consideration has passed from them to the appellee, Cincinnati, Covington & Erlanger Railway Company, nor to either of appellees, to secure such result, unless the granting of the rights to appellee by the state, of the right to use the streets and highways and private property by condemnation, for its use in constructing its road, and which the corporation has never exercised in the municipality of Erlanger, or any nearer thereto than two miles, should be considered a consideration.

It will be observed, that there is no such question presented, as arises, when a railroad corporation proposes a change in the location of its road, after the road has

been constructed, or when it attempts to abandon a portion of its road after construction, or the proper relief where an attempt is made to require a railroad corporation to relay a track and resume operations, where it has removed a portion of its track, and the circumstances existing were such as would have been sufficient to justify a court of equity in restraining its abandonment; nor is there any such question, as arises, when the corporation constructs or attempts to construct its road over a route other than the one designated by its charter, or where it is seeking to exercise the right of condemnation of lands, when it has already determined not to construct its road to the points designated by its charter. Neither is there any question here relative to the result to the corporation of a proceeding to forfeit its rights and powers under its articles of incorporation or charter for failure to comply with its corporate duties and undertakings. Upon the foregoing questions touching the duties of railroad corporations, there can be found much authority in the adjudications of the courts of the various states and of the federal courts, but upon the exact question in issue, here, authority is very scant. The question presented here is simply: Can a railroad corporation, which has been organized under the general corporation laws of the state applicable to railroads, and which has, in its articles of incorporation, named the termini of the road or point through which the road is to be constructed, and has, under its articles of incorporation and the rights and powers possessed by it by reason of the articles, constructed its road from one of the termini designated in the articles, and along the designated route, but has failed for an unreasonable time to complete its construction to the other terminus, or to a point designated by the articles, as upon the route of the proposed road, be compelled by mandatory injunction, at the suit of citizens to construct the road to its designated terminus or designated point upon the route, in the absence of any special circumstances, such as the payment of money, in taxes, and otherwise by municipalities and citizens or the granting of lands, in aid of the construction of the road, by the state or by persons and the acceptance of such taxes, moneys or lands by the corporation, which would impose an obligation upon the corporation to complete the construction of its road to the designated point?

As to whether or not the articles of incorporation of a railroad corporation, organized under the general law

of the state, together with the statutes applicable thereto, constitute a charter for the corporation, and therefore a contract between it and the state, for the benefit of its citizens, is not an inquiry susceptible of much doubt. The corporation, by reason of its articles, obtains life and existence and acquires powers, which individuals do not possess. A corporation organized for the construction and operation of a railroad, acquires the privilege of laying its track over streets and highways, subject to the supervision of the local authorities, and the privilege to cause to be condemned for its purposes the lands of private citizens, and other powers and privileges. These powers and privileges, all, come from the state and cannot be obtained from any other original source, since the state is the repository, in the first instance, of all such powers. The state, by its general statute upon the subject, offers to all of its citizens the privilege of exercising these powers, when as many as seven of them choose to organize themselves into a corporation for that purpose, in accordance with the law provided. A railroad corporation is a quasi public corporation and by reason of such the state is authorized to concern itself in its operations and to require of it the performance of any public duty incumbent upon it, and to make and enforce any needful regulations of a police character, with regard to its operation. Com. v. L. & N. R. R. Co., 120 Ky. 91; Southern Ry. Co. in Ky. v. Hatchett, 174 Ky. 483. The corporation may, likewise, be required to answer for the failure to perform any duty, which it may owe to an individual. Its charter is a contract with the state for the benefit of its citizens, but the question here is whether the terms of the contract are such that the corporation is obligated to build a railroad, or to complete it, after it has commenced to build it. Lapsley v. Brashears, 4 Litt. 46; Berry v. Ransdall, 4 Met. 292; Hamilton v. Keith, 5 Bush 458; G. I. Co. v. Com., 141 Ky. 611. The performance of any legal obligations required of it by the statute laws applicable thereto is, also, a part of the undertakings of every corporation, and hence it is said, that the charter of a corporation, as they are now organized, consists of its articles of incorporation and the laws applicable thereto. The law enjoins upon every corporation every specific duty, which is imposed upon it, either by its articles of incorporation or by the general statute in force and applicable to the subject, where the duty is enjoined, either in express terms or by fair and reasonable implication. 1

Redfield on Railways, 644; State of Minnesota v. Southern Minnesota Railroad, 18 Minn. 40. So far as the adjudications, which have dealt with the specific question under consideration here, the same rule of obligation has been applied to the railroad corporation, in instances, where the corporation has been created by a special grant by the legislative authority, and, in the instances, where the corporation has been organized under a general law of the state, which authorized such organization. The doctrine, to be deduced from the cases, is, that, if the charter expressly requires, in terms, or if it may be reasonably implied from the language of the charter, that the corporation is required to build and operate its entire line between the points designated as the termini of the road, it may be required to do so, and to specifically perform the covenant. Union Pacific Railroad Co. v. Hall, 91 U. S. 34; State v. Hartford & New Haven Ry. Co., 29 Conn. 538; Sherwood v. Atlantic D. R. Co., 94 Va. 291; Kansas City Interurban Ry. Co. v. Davis, 197 Mo. 699. Where, however, the charter merely authorizes the corporation, without, in terms or by reasonable implication, requiring it to do so, to construct and maintain its road to a certain point, the corporation can not be compelled by mandamus or injunction to complete its road to that point. State of Minnesota v. Southern Minnesota Railroad Co., *supra;* Com. v. Fitchburg Railroad, 12 Gray 180; Northern Pacific Railroad Co. v. Dustin, 142 U. S. 499; York & Midland Railway Co. v. The Queen, 1 El. & Bl. 858; Great Western Railway Co. v. The Queen, 1 El. & Bl. 874; Farmers Loan & Trust Co. v. Henning, et al., 8 Fed. Cas. No. 4666; Sherwood v. Atlantic D. R. Co., 94 Va. 291; State v. Central Iowa Railway Co., 71 Iowa 410; People v. Albany, 24 N. Y. 261; San Antonio St. Ry. Co. v. State of Texas, 90 Tex. 520; Jack v. Williams, 113 Fed. Rep. 823; Bardstown & Louisville R. R. Co. v. Metcalfe, 4 Met. 208; State v. Southern Kansas R. Co., 24 Fed. 179. The principle is stated in 33 Cyc. 229, thus:

"A statute or charter, which does not expressly require, but merely authorizes the construction of a railroad, does not impose any positive obligation upon the company to do so, or to complete the entire line authorized after building a part of it, and consequently the railroad company can not be compelled to do so. . . . ."

The appellee, Cincinnati, Covington & Erlanger Railway Company, obtained its articles of incorporation by a certain number of citizens filing a copy with the Secretary

of State and another in the office of the Railroad Commis-
sioners, as provided by section 763, Ky. Stats. Neither
of those officers had anything to do with shaping the terms
or requirements. Such are prescribed by the statute and
within the restrictions fixed by the statute, the terms of
the articles are the making of the incorporators. The
only acceptance of the articles made by those officers was
to give a certificate to the incorporators of the fact of the
articles being filed. Section 764, Ky. Stats., provides, that
the articles of incorporation may be amended or altered,
as provided by section 559, Ky. Stats., which may be done
by the stockholders, without the consent of any one. Sec-
tion 764, *supra,* requires the articles of incorporation of
a railroad corporation, among other things, to state "the
places from and to which, and the name of each county
into or through which it (the railroad) is intended to be
constructed, and its length as near as may be." The ar-
ticles of incorporation, in compliance with the above re-
quirements, described the route of the road, which was
intended to be constructed and operated, as follows:

"Third. The business of said company shall be the
construction, maintenance and operation of a line of rail-
road, not exceeding ten miles long. . . . Said railway
is to be constructed and operated from the city of Coving-
ton, Kenton county, Ky., to the town of Erlanger, in Ken-
ton county, Ky., and to such further point beyond said
town of Erlanger as may hereafter be determined upon,
and over, along and upon such bridges, streets, roads,
highways and such private property, as said company
may, by due process of law, acquire the right to lay its
tracks and other appliances and appendages upon."

A perusal of all the statutes relating to the organiza-
tion and conduct of railroad corporations, and to the con-
struction, maintenance and operation of railroads, dem-
onstrates that, in none of them is there any require-
ment, that a corporation, which has been created for the
purpose of the construction and operation of a railroad,
shall    construct    the    proposed    road,    or,    in    the
event  of  a  construction  of  a  portion  of  it,  shall
be   required   to   complete   its   construction   to   its
terminus,    or    to    any    designated    point    upon    its
proposed  route. The  articles  of  incorporation  do
not contain any covenant in terms upon the part of the
corporation, that it would construct the intended road,
nor can such covenant be reasonably implied from any-
thing stated in the articles. The practical construction

which has been placed by the incorporators of such corporations, the officers of the state and the people, generally, in this state, has been the same as has been placed upon it by the few courts, which have adjudicated upon the question, and that is, that the making and filing of articles of incorporation for the construction of a railroad, which contains no covenant, that the railroad would be constructed, does not impose any duty upon the corporation to construct the proposed road, nor, to complete its construction, after having commenced. If the legislative authority had intended the contrary, it would not have neglected legislation to that effect. No one would contend, that the corporation, upon receipt of the certificate of the Secretary of State and Railroad Commission, that the articles of incorporation had been filed, could then be compelled to construct the intended road. It is clear, that the incorporators could have designated the point to which the road has now been completed, as its terminus, instead of Erlanger, in the articles, or could thereafter have amended the articles to that effect, if they had desired. It is, however, contended, that having exercised the powers and privileges granted it by a construction of a portion of the proposed road, it became obligatory upon the corporation to complete the construction to Erlanger. If this is true, why not require its construction to Erlanger, and then require it to construct it, further, to the extent of the ten miles designated as the intended length of the road? The articles of incorporation and section 768, Ky. Stats., authorized the corporation to pass over and along bridges, streets and highways and over streams, but required it to put them in the condition they were before, and authorized it to condemn such lands, as were necessary for its purposes, but required the damages to the owners to be paid, and only permitted it to use such streets, highways and lands, as it might, by due process of law, acquire for its purposes. It was not required to institute condemnation proceedings, unless it desired to do so. With relation to the construction of railroads under a charter, which merely granted it permission to exercise the right of eminent domain, no obligation rests upon the corporation to complete a road begun, because in the construction of the completed portion the right of eminent domain was invoked. York & North Midland Railway Co. v. The Queen, *supra;* San Antonio Street Ry. Co. v. State of Texas, *supra.*

Hence, it seems, that in the absence of anything, which would create an obligation upon the appellees to build the road or to complete it, after having commenced, other than the description of the general route of the road intended to be constructed, in the articles, the right, which the corporation acquired under its charter was a mere authorization or permission, and it could refuse to exercise it at all, or could cease before completing the proposed road, and there being no duty required of it by the laws, or the terms of the charter to complete the road, and it having complied with the conditions upon which it was granted authority to proceed, as far as it went, with the construction of the road, no duty by contract nor public duty rests upon it to complete the road, and it can not be required to do so by mandamus or injunction.

The contention that the appellee, corporation, is under a legal obligation to construct its road to Erlanger, because of the representations in the articles, that it was intended to be constructed to Erlanger, and to a distance not exceeding ten miles, and thereby escaped the necessity of purchasing a franchise to exist not exceeding twenty years, does not seem to be well taken. It is not a street railway, within the meaning of sections 163 and 164, of the Constitution, since its operation is not confined to the streets of any town or city, and the articles determine the class to which it belongs which is that of an interurban road. Diebold v. Ky. Traction Co., 117 Ky. 146; Elizabethtown, &c., R. R. Co. v. Ashland, etc., 96 Ky. 355. Neither can it be required to extend the construction of its road to the length of ten miles, because of the provisions of section 842a, Ky. Stats. That statute became a law in 1902, after the charter had been received by appellee, and it was presumably operating under it, and further by sub-section 5, of section 842a, *supra*, it is provided, that the provisions of that act shall not affect the powers of corporations, which had theretofore been organized under the general railroad laws of the state.

The judgment is therefore affirmed.