## Turner v. Commonwealth.

(Decided June 7, 1921.)

### Appeal from Fayette Circuit Court.

1. Criminal Law—Chicken Stealing—Sufficiency of Evidence.—On a prosecution for chicken stealing, evidence held sufficient to take the case to the jury and to sustain the conviction.

2. Criminal Law — Punishment — Constitutional Law — Validity of Habitual Criminal Act.—Section 1130, Kentucky Statutes, providing that every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time, of felony, he shall be confined in the penitentiary during his life, is constitutional.

3. Criminal Law—Trial—Continuance—Abuse of Discretion.—The court did not abuse its discretion in refusing the defendant a continuance, on the ground that he was old and broken down in health, and was not in condition, physically or mentally, to confer with his counsel or prepare his defense, where no evidence in support of the affidavit was offered and there was substantial evidence to the contrary, and it did not appear that there was any other evidence which the defendant could have procured, or that his defense was not properly presented.

4. Appeal and Error—Criminal Law—Trial—Postponement of Trial for Insanity Inquest.—Under Civil Code, section 156, providing that the court may postpone the proceedings in a criminal case until a jury be empaneled to inquire whether defendant be of unsound mind, if the court be of the opinion that there are reasonable grounds to believe that defendant is insane, it was not error to refuse to postpone the trial for the purpose of having the defendant examined by two physicians, where the defendant made no affirmative showing that he was then insane, and the court took the precaution to inquire of the county physician and the jailer with reference to the defendant's actions while in jail, and their testimony was calculated to remove any doubt as to defendant's sanity.

5.   Jury—Refusal of Court to Instruct Sheriff That in Summoning
     Extra Jurors No Distinction Be Made Between Men and Women.
     —A motion that the court instruct the sheriff, that in summon-
     ing extra jurors no distinction be made between men and women,
     was properly overruled because the statute prescribes the method
     of summoning jurors, and unless the sheriff asks the advice of
     the court, the court is without authority to direct the sheriff how
     his duty shall be performed.

6.   Appeal and Error—Jury—Motion to Discharge Panel—Improper
     Remarks of Commonwealth's Attorney.—Remarks of the Common-
     wealth's attorney, made on the argument of the motion to have an
     inquest of lunacy before the defendant was put on trial, that every
     time the defendant had been tried in the court he pretended to be
     crazy or sick when the time came for his trial, but the testimony
     in the case showed that he was neither sick nor crazy, was not
     prejudicial where the bill of exceptions failed to show that any
     of the jurors who tried the case were present in court when the
     remarks were made.

7.   Searches and Seizures—Right of Officer Without Warrant to
     Search Property Carried by One Under Lawful Arrest.—An ar-
     resting officer has the right without a warrant to search the per-
     son of a prisoner lawfully arrested, and take from his person and
     hold for the disposition of the court any property connected with
     the offense for which he is arrested and which may be used as
     evidence against him.

8.   Arrest—Arrest Without Warrant.—A peace officer has the right to
     arrest without a warrant when he has reasonable grounds to be-
     lieve that the person arrested has committed a felony.

9.   Appeal and Error—Criminal Law—Arguments and Conduct of
     Counsel.—Improper argument of Commonwealth's attorney held
     not prejudicial, in view of the fact that the court promptly sus-
     tained an objection to his remarks and admonished the jury not
     to consider them.

W. P. KIMBALL, R. E. L. MURPHY and TAYLOR N. HOUSE for
appellant.

CHAS. I. DAWSON, Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Robert Turner was convicted of the offense of chick-
en stealing and his punishment fixed at confinement in
the penitentiary for a period of two years.   He appeals
and assigns numerous grounds for a reversal of the
judgment.

Briefly stated, the facts are these: Ernest McMeekin
is a farmer and lives on the Harrodsburg pike in Fay-
ette county.   He was the owner of several chickens.
About four o'clock on the afternoon of December 21,

1920, Turner was on the Harrodsburg pike not far from McMeekin's home, and was walking toward Lexington with a sack on his back. At the same time, Ernest Thompson, the night chief of police of the city of Lexington, and one or two others were in the city automobile *en route* to Lexington. They saw Turner and recognized him. After running past him they stopped, and one of the men in the car asked Turner if he wanted to ride to the city. Turner said that he did and got into the machine. They asked him what he had and he said he had a sack of chickens. When they reached the city limits, Turner said that he lived there and asked them to stop. Thompson said: "Oh, no, Bob, what do you want to get out here for? You live over on the other side of town. Where did you get those chickens?" Turner replied that he had bought them. Thompson said: "Oh, no, you didn't," and brought Turner on down to the police station. In the sack were several hens and a Plymouth Rock rooster. They put an advertisement in the paper in regard to the chickens. On seeing the advertisement, McMeekin discovered that several of his chickens were gone and then went to the police station. He was able to identify the rooster because it was a pet rooster and belonged to his brother's little girl, and the other chickens resembled those which he had lost. While he identified the chickens as his, he was doubtful if he could have identified them if the rooster had not been with them. It further appeared that twice before Turner had been convicted and sentenced to the penitentiary for the same offense.

On the other hand, Turner testified that he was out in the country setting steel traps and met a colored fellow by the name of George Cole, who lived in the south Elkhorn neighborhood and who sold him the chickens and sack for $7.50, or $1.25 apiece. He further claims that a white man was present and witnessed the transaction. Neither Cole nor the white man appeared as a witness and no effort was made to procure their testimony.

Here, then, we have a case where McMeekin lost certain chickens. Though he was candid enough to admit that he might not have been able to identify the other chickens had it not been for the presence of the rooster, he was certain that the rooster was his, and equally certain that the other chickens were his, in view of the presence of the rooster and of the fact that they corresponded

to the chickens which he had lost. On the day on which the chickens disappeared Turner was in the neighborhood and was seen going from the direction of the McMeekin farm toward Lexington carrying the chickens in a sack. After entering the automobile and reaching the city limits, he pretended that he lived there and wanted to get out, though, as a matter of fact, he lived on the other side of town, some distance away. On being asked what he had in his bag, he said that they were chickens and that he had bought them from a man by the name of Cole. Thus, on the one hand there was evidence that he was in the neighborhood where the chickens were stolen and was in possession of the chickens. On the other hand, there was his unconfirmed statement that he had bought the chickens. In our opinion the evidence of his guilt was not only sufficient to take the case to the jury, but to sustain the verdict. It follows that the court did not err in overruling the motion for a peremptory made at the conclusion of the evidence for the Commonwealth and afterwards renewed at the conclusion of all the evidence.

Another error relied on was the refusal of the court to sustain the demurrer to the indictment. The indictment set forth two former convictions for the same offense. The demurrer challenged the validity of the Habitual Criminal Act, which provides in substance that every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life. Section 1130, Kentucky Statutes. The point is made that the act violates section 17 of the Constitution which provides that excessive bail shall not be required, nor excessive fines imposed, nor cruel punishment inflicted. In reply to this contention, it is sufficient to say that the statute has been attacked on several occasions, not only on the ground that it violates section 17 of the Constitution, but on numerous other grounds, and its validity always has been sustained. Boggs v. Commonwealth, 9 Ky. L. R. 342, 5 S. W. 307; Herndon v. Com., 105 Ky. 199; 48 S. W. 989; Hall v. Com., 106 Ky. 898, 51 S. W. 814; Chenowith v. Com., 11 Ky. L. R. 562, 12 S. W. 585; White v. Com., 20 Ky. L. R. 1942, 50 S. W.

678; Huyser v. Com., 116 Ky. 418, 76 S. W. 174; Taylor v. Com., 3 Ky. L. R. 783.

Another ground urged for reversal was the refusal of the court to grant the defendant a continuance. In his affivadit filed in support of the motion, the defendant stated that he was old and broken down in health, and that he was not in a condition physically or mentally, to confer with his counsel or prepare his defense. No other evidence was offered in support of the motion. The Commonwealth introduced the county physician and jailer, whose evidence tended to show that the defendant was physically able to stand the ordeal of a trial, and that his condition had not been such as to prevent him from preparing the case. Furthermore, the record shows that the indictment was returned on December 29, 1920. Defendant was arraigned on January 5, 1921, and entered the plea of "not guilty." The case was assigned for trial on February 3, 1921, but the trial did not take place until February 14, 1921. It is not contended that there was any other evidence which the defendant could have procured. The issues in the case were few and simple. His defense was ably conducted. In view of these circumstances, and of the further fact that the evidence as to his physical and mental ability to prepare for and stand the trial greatly preponderates over the evidence to the contrary, it is clear that the court did not abuse a sound discretion in refusing a continuance.

Another contention is that the court erred in overruling the motion to have two physicians appointed by the court to determine the question of defendant's sanity before going into trial. The Code authorizes the court to postpone the proceedings in a criminal case until a jury be empaneled to inquire whether defendant is of unsound mind, but only in the event that the court be of the opinion that there are reasonable grounds to believe that the defendant is insane. Civil Code of Prac., section 156. Notwithstanding the lack of an affirmative showing by the defendant that he was then insane, the court took the precaution to inquire of the county physician and the jailer with reference to the defendant's actions while in jail, and their testimony was calculated to remove any doubt as to defendant's sanity. That being true, the court did not have reasonable grounds to believe that the defendant was insane, and there was no error in re-

fusing to postpone the trial for the purpose of having the defendant examined by two physicians.

When the jurors were being called and examined, and when the regular panel was exhausted, the defendant moved the court to instruct the sheriff that in summoning extra jurors no distinction be made between men and women. The motion was properly overruled because the statute prescribes the method of summoning jurors, and unless the sheriff asks the advice of the court, the court is without authority to direct the sheriff how his duty shall be performed.

Another insistence is that the court erred in overruling the defendant's motion to discharge the jury panel, because the Commonwealth's attorney, in arguing the motion to have an inquest of lunacy before defendant was put on trial, made the following remark in open court: "Every time he (meaning defendant) has been tried in this court he pretended to be crazy or sick when the time comes for his trial, but the testimony in the cases showed he was neither sick nor crazy." We need go no further than to say that the bill of exceptions fails to show that any of the jurors who tried the case were present in court when the remark was made. That being true, it cannot be said that the remark was prejudicial to the substantial rights of the accused.

Still another contention is that the principal evidence in this case was obtained by unreasonable search and seizure, contrary to section 10 of the Constitution, and to the rule laid down in the case of Youman v. Com., 189 Ky. 152, 224 S. W. 860. An examination of that case will show that it distinctly recognizes, as a long established exception to the rule against search and seizure, that an arresting officer has the right without a warrant to search the person of a prisoner lawfully arrested, and take from his person and hold for the disposition of the court any property connected with the offense for which he is arrested and which may be used as evidence against him. 2 R. C. L., sec. 25, page 467. Here, the defendant had been out in the country and was going toward the city with a sack filled with chickens. The officers who took him in the automobile knew him and knew of his prior convictions as a chicken thief. When they reached the edge of town, the defendant, pretending that he lived there, asked to be let out of the machine. As a matter of fact, he did not live there, but lived on the other side

of town, and it was much nearer to his home to go as far as the officers intended to go. When asked what he had in the sack, he stated that they were chickens, and said to the officer that he had bought them. Our Code authorizes an arrest without a warrant where the officer has reasonable grounds to believe that the person arrested has committed a felony. Section 36, Criminal Code; Wright v. Com., 85 Ky. 123, 2 S. W. 904; Morton v. Sanders, 178 Ky. 836, 200 S. W. 24. In view of the conduct of the defendant and all the circumstances surrounding the transaction, it seems to us that the arresting officer had reasonable grounds to believe that the defendant had committed a felony. Therefore, he had the right to arrest the defendant and the further right, after the defendant was under arrest, to open the sack and use the evidence thus obtained against the defendant.

A reversal is asked on the ground of improper argument by the Commonwealth's attorney. It appears that the court promptly sustained an objection to the remarks complained of, and admonished the jury not to consider them. In view of this action by the court, we are not prepared to say that the remarks of the Commonwealth's attorney were such as to prejudice the substantial rights of the defendant.

Other questions are raised but we deem it unnecessary to discuss them. It is sufficient to say that the defendant had a fair trial, and we perceive no reason for disturbing the verdict.

Judgment affirmed.