# Commonwealth v. Abell.

(Decided Nov. 22, 1938.)

HUBERT MEREDITH, Attorney General, JESSE K. LEWIS, Assistant Attorney General, and CARROLL MORROW for appellant.

CHARLES G. FRANKLIN and H. W. VINCENT for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

Cecil Abell was convicted in the quarterly court of Hopkins county on a charge of operating a motor truck upon a highway with a load in excess of the maximum limit prescribed by law and his punishment fixed at a fine of $50. On appeal to the circuit court of that county the case was submitted to the court without the intervention of a jury upon the following stipulation of facts:

"It is agreed and stipulated by the parties Plaintiff and Defendant that the evidence in this case subject to relevancy and competency, will be as follows:

"That on or about the 5th day of December, 1937, State Patrolman, Joe Wheeler, saw the defendant Cecil Abell, driving and operating a truck on public highway No. 41 in Hopkins County, Kentucky. That it appeared to said Wheeler at that time that the truck was overloaded, and he stopped the driver, Cecil Abell, and asked that he drive on the scales and have the truck weighed, and in response he drove on the scales and had the truck weighed, and in response to the request of said officer the driver submitted to having the truck weighed, but did not consent thereto. The weighing of said truck resulted in the establishment of the fact the truck weighed 31,500 pounds, which made an excess load over and above the State law of 13,500 pounds. At this time, after the truck had been weighed, the officer arrested the driver thereof for operating an overweight truck on the public highway. After the defendant was arrested, he was requested to unload all of said load in excess of the Statutory weight of 18,000 pounds, which the driver did, and he was then permitted to go on his way.

"The defendant objects to the introduction of any evidence in this prosecution obtained by weighing the truck, and objects to any evidence of the patrolman obtained by reason of his being required to drive on the scales and weigh said truck.

"It is further stipulated and agreed that the said Joe Wheeler was accompanied by another state patrolman and that both were in uniform and presented their badges of office at the time of the stopping and weighing of the truck and that the evidence of the two patrolmen obtained by the weighing of the truck, was the only evidence in the case, to which evidence the defendant objects."

It appears from the record that Abell was driving a truck for the Whitney Transfer Company. All other material facts appear in the stipulation. It was contended by counsel for accused in the court below, as it is here, that requiring him to drive the truck on the scales to be weighed amounted to illegal search and seizure within the meaning of section 10 of the Constitution of Kentucky and furthermore that it was compelling him to give evidence against himself in violation of section 11 of the Constitution. The court sustained those

contentions, adjudged the defendant not guilty and dismissed the warrant, stating that the evidence relied on for conviction which was objected to was procured in violation of the Constitution. The Commonwealth has filed a transcript of the record in this court and entered a motion for an appeal. From the foregoing it will be seen that the only question presented by this appeal is whether evidence on which the Commonwealth relied for conviction was obtained in violation of either or both of the sections of the Constitution referred to.

In order to operate this truck in the carriage of freight for hire it was necessary to secure a permit from designated authorities. Embodied in the same laws under which the permit was secured are the rules and regulations governing the operation of such trucks, Kentucky Statutes, section 2739g-80, et seq. It is provided (Section 2739g-82) that no truck whose gross weight including the load is in excess of 18,000 pounds shall be operated on any highway and section 2739g-95 prescribes the procedure to be followed by officers having reasons to believe that the height, width, length or weight of any motor truck is in excess of the maximum limit prescribed by law.

Section 10 of the Constitution provides in substance that the people shall be secure in their persons, houses, papers and possessions from unreasonable search and seizure without proper warrant; and section 11 among other things provides in effect that in criminal prosecutions the accused cannot be compelled to give evidence against himself. All the cases relied on by appellee to sustain the judgment of the lower court relate to search of the person or the private premises or possessions of accused for liquor, etc., without proper warrant authorizing such search. It is our view that those cases have no application here. The stipulation discloses beyond any doubt that there was no search of the truck within the meaning of section 10 of the Constitution. The officers apparently saw that it was greatly overloaded and requested the operator to drive upon the scales to be weighed. He voluntarily complied with this request. He was not compelled by the officer to drive the truck onto the scales, and the stipulation discloses that he merely did not expressly consent to the weighing of the truck. It is therefore equally apparent that he was not thereby compelled to give evidence against himself within the meaning of section 11 of the Constitution.

Furthermore, this truck was being used as a common carrier of freight for hire. Whitney v. Newbold, 270 Ky. 209, 109 S. W. (2d) 406.

In 9 Am. Juris. 449, it is said:

"The doctrine that common carriers, in the exercise of their public functions, are subject to governmental control and regulation has become so well established as to be regarded as one of the fundamentals of the law."

And the same work at page 450 in giving the basis for that doctrine says:

"Property becomes clothed with a public interest when used in a manner to make it of public consequence, and to affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created."

The doctrine referred to in the above quoted excerpts has been recognized and given effect by this court. See Bentler et al. v. Cincinnati, C. & E. Railway Company et al., 180 Ky. 497, 203 S. W. 199, L. R. A. 1918E, 315.

It is settled beyond controversy in this jurisdiction that the Legislature may regulate the use of the highways by common carrier trucks. Whitney v. Newbold, supra; Whitney v. Fife, Judge, et al., 270 Ky. 434, 109 S. W. (2d) 832; Ashland Transfer Company v. State Tax Commission, 247 Ky. 144, 56 S. W. (2d) 691, 87 A. L. R. 534. In the former opinion it was pointed out that by the enactment of the legislation regulating the use of highways by common carriers, the Legislature had determined the public policy of the state with respect thereto; that the unrestricted use of highways by such carriers would result in their damage and entail great additional cost for their maintenance and repair and also render their use by the public increasingly hazardous. It was further pointed out that the justification for these regulatory statutes was to be found in the police power of the state.

In 24 R. C. L. at page 704, it is said in substance that constitutional provisions like section 10 of our Con-

stitution are primarily designed to protect people in the security and sanctity of their homes and the privacy of their books, papers and property but have no application to laws or rules and regulations adopted in the exercise of the police powers for the protection of health, morals, and general welfare; and enumerated as such reasonable rules and regulations are laws requiring pawn brokers to keep books showing their transactions and to submit same and goods received in pawn to official inspection; or requiring persons dealing in food to furnish samples for inspection and analysis and providing for seizure and destruction of foods unfit for human consumption.

In Mansbach Scrap Iron Company v. City of Ashland, 235 Ky. 265, 30 S. W. (2d) 968, an ordinance was upheld as constitutional which required dealers in junk to consent to inspection and search of premises as a prerequisite to obtaining a license to engage in such business. In Wibmer v. State, 182 Wis. 303, 195 N. W. 936, a license had been granted to sell non-intoxicating liquors under a statute providing that no person having such license shall have in his possession, on or about said premises any intoxicating liquors; and that the commissioner, his deputy or any peace officer might inspect such premises at any reasonable time without warrant. It was held that the acceptance of the license was necessarily an acceptance of the accompanying statutory conditions and as to the premises was an implied waiver of the search and seizure provisions of the Constitution.

In Keiper v. City of Louisville, 152 Ky. 691, 154 S. W. 18, it was held that in the exercise of the police power a city may provide for the inspection of foods by a competent inspector in places where they are kept or offered for sale without violation of section 10 of the Constitution prohibiting unreasonable search and seizure. In State v. Donovan, 10 N. D. 203, 86 N. W. 709, it was held that under a statute requiring a druggist to keep a record of sale of intoxicating liquors by him which should be subject to public inspection at reasonable times, the privilege and immunity against self-incrimination was not available to him with respect to books kept under such law.

In Wilson v. U. S., 221 U. S. 361, 381, 31 S. Ct. 538, 545, 55 L. Ed. 771, Ann. Cas. 1912D, 558, Chief Justice Hughes regarding the same doctrine, said:

"The fundamental ground of decision in this class of cases is that where, by virtue of their character and the rules of law applicable to them, the books and papers are held subject to examination by the demanding authority, the custodian has no privilege to refuse production although their contents tend to criminate him. In assuming their custody he has accepted the incident obligation to permit inspection."

The foregoing and numerous other authorities cited in Mansbach Scrap Iron Company v. City of Ashland, supra, are conclusive.

As has been pointed out in a number of opinions by this court the state might have withheld the granting of power for common carriers' truck lines to use the highways of the state. The right to operate such trucks is limited by the statute granting the right and the right to operate such trucks is preserved only so long as the operator obeys the laws creating the right and which reserves the right of officers of the law to investigate for the purpose of determining whether the power and privilege granted has been exceeded. This truck was being operated in flagrant violation of the law in that it was carrying 13,500 pounds in excess of the maximum weight permitted by law. As indicated in the foregoing authorities these regulatory statutes should be read in connection with, if not in fact into, the permit granted to operate the truck. The regulations in question are reasonable and in the interests of public welfare in attempting to preserve and to make the roads safe for general use. The business was impressed with a public interest and the acceptance of a permit to operate the truck under the law fixing reasonable rules and regulations to safeguard the public interest was an acceptance of those provisions and at least an implied waiver of immunity from the acts and matters complained of. It is therefore our conclusion that no violation of either of the provisions of the Constitution invoked by appellee is involved.

U. S. v. Mulligan, D. C., 268 F. 893, domestic and foreign cases above cited and many others of similar import not cited carefully safeguard the privilege and immunity of the citizen in his purely private affairs and unregulated business and carefully distinguish private and unregulated business from business engaged in only

808

by permission of the government and under government regulation. We reaffirm and adhere to our holding in cases cited by appellee and will continue to do so to safeguard citizens from oppression and violation of natural and inherent rights which the invoked provisions of our Constitution were intended to preserve, although such a course may in isolated instances permit the guilty to escape the penalties of the law, but we will not approve or consent to such a perverted construction of these salutary provisions as will extend them to immunities clearly not intended and to serve no purpose other than to protect offenders in wanton violation and disregard of law.

Much of what we have said relates to common carriers' trucks, but independently of that feature of the case it will be seen that in the main most of the authorities cited have equal application to contract carriers and to privately owned and operated trucks making use of highways. Since the preservation and the safety of highways is a matter of vital public concern, and an appropriate subject for the exercise of the police power of the state, users of the highway must submit to reasonable rules and regulations adopted to attain these ends, regardless of the character of the vehicle he is operating or the purpose for which it is being used.

The offense of which appellee stands charged is a misdemeanor, punishable by fine only, Kentucky Statutes, section 2739g-93, and in such case the Commonwealth may appeal and upon reversal have a new trial, notwithstanding the former judgment of acquittal. See Commonwealth v. Bowman, 267 Ky. 602, 102 S. W. (2d) 382, and authorities therein cited.

Wherefore, the motion for appeal is sustained and the judgment reversed and cause remanded for a new trial and proceedings in conformity with this opinion.

Whole Court sitting.