## Commonwealth v. Puckett.

Feb. 24, 1939.

W. J. BAXTER, Judge.

132

HUBERT MEREDITH, Attorney General, and G. MURRAY SMITH for appellant.

No brief for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS—Certifying the law.

Section 1309 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes is partly in these words: "If any person shall carry concealed a deadly weapon upon or about his person, other than an ordinary pocket knife, or shall sell such weapon to a minor other than an ordinary pocket knife, such person shall, upon conviction, be fined not less than fifty nor more than one hundred dollars and imprisoned in the county jail for not less than ten nor more than forty days, in the discretion of the court or jury trying the case."

On September 30, 1936, the chief of police of the city of Winchester, Kentucky, was given a warrant for the arrest of appellee, Charles F. Puckett, in which he was charged with the commission of a misdemeanor which the brief for the commonwealth says was a breach of the peace. The officer, together with a deputy, went to the boarding house or place of residence of Puckett, and served the warrant upon him by arresting him under it, after which his person was searched and there was found concealed in a pocket of his trousers a 32 caliber pistol, a deadly weapon as contemplated by the statute. The officers went before the grand jury of the county which was then in session and procured an indictment against Puckett charging him with a violation of the statute, upon which he was later put on trial. The two officers testified without objection to the facts as so related, when at the close of their testimony the court sustained defendant's motion for a peremptory acquittal and so instructed the jury, which was followed by a verdict in accordance with the instruction. The commonwealth has prosecuted this appeal under the provisions of Section 347 of our Criminal Code of Practice for the purpose of procuring a certification of the law.

Neither the court in any order or juagment, nor at any place or time in the record, stated the reason for directing the acquittal of Puckett on the trial of the indictment accusing him of carrying concealed upon his person a deadly weapon, nor have we been favored with a brief for appellee in which (if one had been filed) counsel preparing it would possibly have given the reason assigned by the court. In the brief for the commonwealth it is said: ''What prompted the court to direct the entry of this verdict is beyond my knowledge;'' and we, in the light of the law—which is as plain as the noonday sun on a cloudless day to one possessing two perfect eyes—are compelled to coincide with that statement. Only two possible reasons could have motivated the court in so widely departing from the correct course, and which are: (1) That the statute did not apply to the carrying concealed upon one's person a deadly weapon in his own residence, and (2) that the evidence of defendant's violation of the statute was obtained by an illegal search of his person by the policeman and which the trial court may have concluded was inadmissible as in violation of Section 10 of our Constitution, a part of our Bill of Rights. No conceivable reason may be gleaned from the record other than one of the two possible ones stated.

In regard to the first one it will be observed that the statute against the carrying of such concealed deadly weapons makes no exception as to places or persons. On the contrary it is of universal application, and denounces the act wheresoever it may occur within the limits of the state and by whomsoever committed, except a following section (1313) exempts from the application of the statute certain officers in the discharge of their official duties; but it is not claimed that Puckett came within any of those exceptions or exemptions. In such circumstances courts, including this one—as well as all text writers on the subject—are of one accord that the accused in such a charge is not exempted from the penalties of the statute because the offense that he committed was on his own premises or in his own dwelling. The text in 68 C. J. 31, Section 21, says in part: ''Where a statute prohibits carrying or having in possession of a weapon or a designated kind of weapon, making no exception as to locality, it is unlawful to carry or possess such prohibited weapon anywhere, even on one's own premises.'' In note 8 to that text are cited

supporting cases from Alabama, Arkansas, Delaware, Georgia, Kentucky, Missouri, New York, Ohio and Tennessee. One of the cases from New York is that of People v. Demorio, 123 App. Div. 665, 108 N. Y. S. 24, 25, in which the court said: "The mere fact that a man carries such a weapon in his own curtilage does not warrant the conclusion that he would not use it if occasion offered, and does not negative the conclusion that he did not have it under such circumstances for any wrongful offensive or defensive purposes." In Dunston v. State, 124 Ala. 89, 27 So. 333, 334, 82 Am. St. Rep. 152, it is said: "One of the objects of the law is the avoidance of bad influences which the wearing of a concealed deadly weapon may exert upon the wearer himself, and which in that way, as well as by the weapon's obscured convenience for use, may tend to the insecurity of other persons."

Another cited case is that of State v. Nieto, 101 Ohio St. 409, 130 N. E. 663, 664, in which that court said: "Nor does the rule expressed in the maxim, 'every man's house is his castle,' prevent the statute from operating within an individual's home," etc. On page 839 of 73 A. L. R. is the beginning of an extensive annotation on the question of "Offense of carrying weapon on person as affected by place where defendant was at the time." Its beginning statement says: "Ordinarily the place where a person is at the time of carrying a weapon is immaterial except where the statute expressly permits carrying it in that place, or makes it a distinct offense to carry weapons there, and in some cases where the person carrying is an officer without his territorial jurisdiction." That statement is immediately followed by more than two pages of cases in which the courts substantiate it, and which include cases from 17 independent jurisdictions within the United States, including the Commonwealth of Kentucky in the two cases of Bailey v. Commonwealth, 11 Bush 688, and Commonwealth v. Walker, 7 Ky. Law Rep. 219; the latter of which is a superior court abstract but that court decided the question directly. In the Bailey case the statute at that time exempted from its operation certain places named in it. The defendant therein left his home to go to one of the exempted places and in leaving it (and enroute) he concealed upon his person a deadly weapon, and he was found with it before he arrived at the exempted place. We held that the statute then in

existence embraced all places, except the specifically exempted ones, and that their exemption did not extend to or embrace the time occupied by the accused violator in going from his home to that place, but that he was guilty of violating the statute as it was then written— the language employed by us being: ''Therefore such a person could not lawfully carry concealed weapons while going from his home to the place of anticipated meeting, but must go unarmed or with his [fire] arms exposed to view, until, meeting his enemy, he is in present danger; and then, and then only, he may lawfully conceal them; and when again out of his enemy's presence he can no longer lawfully carry them concealed.'' There is, perhaps, no question more emphatically and more universally settled contrary to the court's ruling in this case, if he so concluded as supposed. It is, therefore, plain that if the trial court in this case based his ruling complained of on the possible ground (1) supra, it was not only erroneous, but utterly without foundation in the law.

Possible ground (2) is equally as fallacious. Perhaps in as many as one hundred cases we have held that a search warrant was not necessary in order to search one's premises or person by an officer when the search was made after legally arresting the defendant for another and independent crime, since the officer has the right to search his prisoner (or the immediate premises in which the arrest is made) after the arrest is completed. One of the cases in which the law was so declared is that of Turner v. Commonwealth, 191 Ky. 825, 231 S. W. 519. As said, there is no case to the contrary, while there are many others conforming to the ruling in that case, some of the prior ones being cited in the Turner opinion.

We, therefore, have a case where the law upon the only two possible reasons that may be urged to sustain the court's ruling complained of have been thoroughly dissipated by judicial determination and interpretation, and where there exists no other possible reason for the action taken. We have already said there was no objection to the testimony of the two officers—who were the only witnesses heard upon the trial—and, even if their testimony was incompetent for any reason and subject to exclusion, the incompetency was waived by defendant, Puckett, through his failure to object thereto. The error of the court in giving the peremptory instruction

of acquittal complained of by the commonwealth on this appeal is too patent to deserve further space or time in its discussion. The judgment may not be reversed, since imprisonment is a part of the punishment. See Section 352 of our Criminal Code of Practice.

Wherefore, this opinion is certified as the law of the case.