**Herbert CLARK, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

March 12, 1965.

Dissenting Opinion March 26, 1965.

John J. Tribell, William S. Tribell, Middlesboro, for appellant.

Robert Matthews, Atty. Gen., David Murrell, Ass't Atty. Gen., Frankfort, for appellee.

STEWART, Judge.

Herbert Clark, charged with transporting alcoholic beverages for sale in local option territory, under KRS 242.260, was found guilty and fined $100 and sentenced to 30 days in jail. See KRS 242.990(1). He appeals.

There must be a reversal of the judgment in this case for the reason shown hereinafter, with the result that another trial will likely be had. Aside from the error assigned upon which our reversal is based, it is urged the indictment should have been dismissed.

In this latter connection appellant strongly insists the alcoholic beverages that were found in a car he was driving, which fact constitutes the basis of his conviction, were obtained through an illegal search and seizure, no law having been violated by him before his car was stopped.

The evidence in this case is very skimpy and, so far as relevant, discloses that two troopers of the Kentucky State Police, Merle Harrison and Dan Davidson, on January 25, 1964, around 6:00 p. m., were on routine duty on U. S. Highway No. 119, traveling from Harlan toward Cumberland. They met a car near Ross Point. Trooper Harrison testified: "I noticed the car seemed to be setting very low in the back, and it was apparent the driver was having some difficulty. I turned and stopped the car at Chappell's Dairy. As I walked up to the car to get the license, it was noticeable to the eye without strain there was a quantity of alcoholic beverages." He stated he saw a case and some cans of beer with the name "Slitz" on them "setting visible" on the floor of the car where the back seat had been removed. Thereupon he arrested appellant, searched the car and found a considerable amount of whiskey and other intoxicants in the trunk.

On cross-examination this witness was asked: "And, when you saw this car go by riding kind of low in the rear did some idea formulate in your mind as to what the contents might be?" He answered: "No, sir, not at that time. The car seemed to have a little weave to it."

Trooper Davidson, called as a witness for the Commonwealth, testified appellant's reputation was bad for trafficking illegally in alcoholic beverages. Appellant did not testify.

There was no unlawful search under the evidence presented. When the troopers approached appellant's car in order to make their investigation, it is undenied the beer in the back part was in plain view. The constitutional guaranty which affords protection from an illegal search does not prohibit a seizure without a warrant where there is no need of a search; that is, where the outlawed object discovered is visible, open and obvious to anyone who even casually looks about his surroundings. See Hancock v. Commonwealth, Ky., 262 S.W. 2d 670, and Wilson v. Commonwealth, Ky., 258 S.W.2d 497.

The incriminating articles connected with the arrest of appellant and detected in his possession could be seized to be used as evidence against him, Turner v. Commonwealth, 191 Ky. 825, 231 S.W. 519, unless it be shown the troopers had no lawful right to stop him. The latter assumes the detention was illegal per se if there was no offense committed in the presence of the officers.

This contention is obviously untenable in the face of Commonwealth v. Robey, Ky., 337 S.W.2d 34, and Commonwealth v. Mitchell, Ky., 355 S.W.2d 686. The Robey case states there must be a bona fide cause to justify the restraint by an officer of a motorist traveling upon a public highway. This does not mean, as that case points out, a bona fide cause arises only if an offense is perpetrated in the officer's presence. In this connection the Robey case said at page 36 of 337 S.W.2d: " * * * the rule appears to be well established generally that if officers observe a motorist driving in an erratic manner such as to suggest the possibility that he is drunk they may stop him, and if they discover from mere observation of him after he has stopped that he is drunk the evidence so obtained is admissible in a prosecution for drunken driving * * *."

It will be noted that it is sufficient reason to stop a motorist if he is driving in an erratic manner. In the case at bar appellant was observed by the troopers to be "having some difficulty" and his car "seemed to have a little weave to it." This, we believe, under the authority of the Robey case, was enough irregularity in the way he handled his car to give the officers a bona fide cause to stop him. KRS 189.730(1) provides, so far as applicable here, that any trooper " * * * may, at any time, upon reasonable cause to believe that a motor vehicle is unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair, require the

driver of such motor vehicle to stop and submit such vehicle to an inspection and such test with reference thereto as may be appropriate."

Likewise, in the Mitchell case the action of state police officers in setting up a "road block" for motor vehicles for the purpose of requiring drivers to display an operator's license is not an unlawful arrest or restraint or an illegal search contrary to the Constitution of Kentucky, and hence evidence that the driver who was stopped had no license was admissible in a subsequent prosecution for operating a motor vehicle upon a public highway without an operator's license.

The Mitchell case also emphasizes the fact, and we believe properly so, that the enjoyment of many personal rights and freedoms is subject to many kinds of restraints under the state police power, including such reasonable conditions as may be determined by the governmental authorities to be essential to the safety, good order and public welfare. See also Commonwealth v. Abell, 275 Ky. 802, 122 S.W.2d 757.

■■ We conclude no ulterior motive or special pretext was shown as a reason for stopping appellant's car; furthermore, a bona fide cause was established for the stopping. Therefore, the discovery from mere observation of the alcoholic beverages in his automobile made his arrest legal and, in consequence, made the contraband liquor competent evidence to be used in the charge preferred against him.

Other grounds of a strictly procedural nature were complained of as prejudicial errors, but as none of these should recur at another trial we deem it unnecessary to discuss and resolve them.

■ The judgment of conviction must be reversed, however, because of an error in "Instruction No. 1." It will be recalled appellant was indicted for transporting alcoholic beverages in local option territory

for the purpose of sale. The instruction, as phrased, did not require the jury to believe the transportation was *for the purpose of sale* in order to find him guilty.

The mere possession of alcoholic beverages in an automobile in local option territory is not a violation of the statutory provision dealing with the transportation of alcoholic beverages in local option territory for the purpose of sale. See Irvin v. Commonwealth, Ky., 317 S.W.2d 178.

Where the charge is "transporting for the purpose of sale," the words "for the purpose of sale" are the material part of the charge. See Commonwealth v. Polous, 197 Ky. 280, 246 S.W. 799. Obviously the instruction was defective because it failed to contain the "material part" of the offense of which appellant was indicted.

Wherefore, the judgment is reversed for further proceedings consistent with this opinion.

MONTGOMERY, Judge (dissenting).

I feel that the evidence in this case should have been suppressed because the search was not made incident to a valid arrest. The majority opinion recognizes that the validity of the arrest and search is dependent on the right of the state trooper to stop the car. The trooper admitted that "no apparent violation" of the law had been committed by appellant as he was driving his car on the highway prior to being stopped. The trooper further admitted that he had had no call and was not looking for the car driven by appellant.

The majority opinion depends on Commonwealth v. Robey, Ky., 337 S.W.2d 34, and Commonwealth v. Mitchell, Ky., 355 S.W.2d 686, as justification for upholding the stopping.

The Robey case affords no comfort. There, the driver was legally arrested for a violation of the reckless driving statute and on this basis it is distinguishable. There is no claim in the case at bar that appellant

was arrested for reckless driving despite the trooper's statement that " * * * the car seemed to have a little weave to it." Further in the Robey case the Court said:

" * * * While we are not aware of any precedent for holding that evidence obtained as a result of an officer's merely stopping a person is inadmissible, we feel that due respect for the basic right of liberty (Ky. Const. Sec. 1) should afford some protection against the unjustified or unreasonable stopping of a person by a police officer. Accordingly, it is our view that if an officer stops a motorist without bona fide cause any evidence obtained as a result of the stopping should be considered to have been illegally obtained and therefore inadmissible."

The Mitchell case affords less solace. It was there held that the action of police officers in setting up a "roadblock" for motor vehicles for the purpose of requiring the driver to display an operator's license is not an unlawful arrest or restraint or an illegal search contrary to the Constitution. There is not even any contention in the present case that a "roadblock" had been set up.

In the Mitchell case, after approving the "systematic and indiscriminate stopping of all motor traffic on the highway for the good faith purpose of making inspections of drivers' licenses," the Court, in effect, condemned the type of conduct indulged in by the trooper here as follows:

" * * * Our decision may not be regarded as sanctioning the stopping of cars for the ostensible or pretended purpose stated when in reality it is actuated by an ulterior motive not related to the licensing requirement, or is done as a pretext or as a subterfuge for circumventing the constitutional provision against searches of persons and property without a valid warrant. We shall continue to condemn such an act. See 5A, Am.Jur., Automobiles and Highway Traffic, § 134; Cox v. State, 181 Tenn. 344, 181 S.W.2d 338, 154 A.L.R. 809."

The attempt to justify the stopping by reference to KRS 189.730(1) on the ground that the car had a "little weave" and was therefore "unsafe or not equipped as required by law, or that its equipment is not in proper adjustment or repair," falls into the category of pretext or subterfuge condemned in the Mitchell case. The trooper never made any claim that he stopped the car for any such purpose. Clearly it is an afterthought to seek to justify the stopping on the basis of the statute.

Under the circumstances and in the light of these authorities the trooper had no bona fide cause for stopping the car and no probable cause for believing that a misdemeanor was being committed in his presence, which was essential before he was authorized to arrest. He said that there was "no apparent violation." The conduct of the trooper constituted an unreasonable search and seizure. Kentucky Constitution, Section 10.

The Supreme Court has recently condemned the stopping of a motor vehicle with neither an arrest warrant nor a search warrant. Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (decided November 23, 1964). It was held that the defendant's arrest without warrant for possession of clearing house slips, a felony, by police officers who had a picture of the defendant, knew that he had a record of previous convictions for possession of clearing house slips, and were looking for him, without any showing that the officers had heard or seen anything else to give them ground for belief that the defendant had acted or was then acting unlawfully, violated the Fourth and Fourteenth Amendments and evidence seized from his person during the ensuing search was inadmissible.

Beck was driving his automobile on East 115th Street in Cleveland when he was ac-

costed by police officers who identified themselves and ordered him to pull over to the curb. He was placed under arrest without warrant and then searched. The Supreme Court held that the constitutionality of the search depended on the constitutional validity of the arrest which turned on "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." It was pointed out that anything less than the probable cause requirement "would be to leave law-abiding citizens at the mercy of the officers' whim or caprice."

The further comments of the Supreme Court are equally pertinent here:

"* * * In complete contrast, the record in this case does not contain a single objective fact to support a belief by the officers that the petitioner was engaged in criminal activity at the time they arrested him.

"An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment. * * *

* * * * * *

"* * * If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police."

The effect of the majority opinion is to place the law-abiding public who travel the highways at the mercy of all law enforcement officers or persons who may seek to stop them on the highways. How can a woman driving alone at night in a law-abiding manner feel safe when she knows that the majority opinion gives any law enforcement officer the right to stop her? For that matter, what is to prevent one who is not a law enforcement officer from doing the same thing if the motorist is compelled to stop? Never in this land of liberty should such police state methods be permitted. Is the next step a similar right of entry into the home? The consequences which may flow from the majority opinion are frightening.

For these reasons I do not think that the state trooper had probable cause for stopping appellant's car, and the evidence so obtained should be suppressed.

MOREMEN, C. J., and MILLIKEN, J., join in the dissent.